Benson L. WINTERS et al., Respondent,

v.

SEARS, ROEBUCK AND CO., Appellant.

No. 37373.

Missouri Court of Appeals, St. Louis District, Division Two.

July 26, 1977.

Robert C. Ely, Robertson, Ely & Wieland, St. Louis, for defendant-appellant.

John H. Marshall, Robert H. Burns, Clayton, for plaintiffs-respondents.

STEWART, Judge.

Defendant, Sears, Roebuck & Co., appeals from a jury verdict in favor of Benson and Alta Winters and their insurer, Western Casualty & Surety Co., in an action based on strict liability in tort for damages to the Winters' home caused by a fire involving a television set sold to Winters by Sears. Sears contends that the trial court erred in denying its motion for a judgment notwithstanding the verdict or alternatively for a new trial because the evidence in the case was insufficient to support a finding that the fire had been caused by a defect near the small end of the television picture tube or that any such defect had been present at the time the set was sold to Mr. and Mrs. Winters. Appellant also contends that the trial court erred in overruling defendant's objection to a hypothetical question propounded to the plaintiffs' expert which included an assumption that neither the picture tube nor its attachments had been the subject of repairs or replacement. We affirm the judgment of the trial court and remand for trial on the issue of damages.

Two and a half years before the fire, which gave rise to this action, Mr. and Mrs. Winters bought a color television set of the "instant-on" variety from Sears, along with a 26-month service contract. This set did not work properly and was replaced by the set which is the subject of this action. Within a month after delivery, the television set began to malfunction and Sears was called upon many times over the life of the service contract to repair the set. To Mr. Winters' knowledge Sears had never made any changes involving the picture tube or its attachments. The repairs included replacement of the tuner, some tubes, resistors, and a transformer. The repair slips, which plaintiff had received from Sears, did not reveal the nature of any of the repairs. They showed only that repairs had been made. No one but Sears serviced the set during the contract period.

A little more than a month after the service contract ended, the television set went dead. United Television Sales Service, (United), was called. United removed the bottom part or chassis of the set and took it to their shop. The picture tube, the deflection yoke, which fits over the small end of the picture tube, and the attachments to the tube were not touched. The repairman from United testified that he had worked on the voltage regulator and the horizontal output section and that he had replaced some tubes and resistors, all of which were located in the chassis portion of the set. He further testified that the work that he had performed made no changes in or alterations to the picture tube, or to any of the attachments to the picture tube, including the deflection yoke. Plaintiff testified that neither he nor his family or friends had ever attempted to work on the set.

On March 3, 1972, the chassis was returned to the Winters and the television appeared to operate properly. On April 13, 1972, Mr. Winters returned home early in the afternoon from working the night shift. He turned on the television and dozed off in front of it. He awakened to find that "fire was coming up out of the back of the T.V." He went for water to extinguish the fire and when he returned he tried to jerk the set away from the wall, at which point, "the fire just went every place." The assistant fire chief, who responded to the fire, testified that the fire originated in the area of the television set, along the southwest wall of the living room. He further testified that the wall directly behind the set, about 8–10 inches above the floor, was "scarred real bad."

Plaintiffs' expert, Dr. Richard Koopman, Professor Emeritus at Washington University and former head of the Electrical Engineering Department, testified that he had examined the set after the fire and concluded that the source of the fire was at the small end of the picture tube. He based his opinion on a burning pattern he had observed at the end of the picture tube and on the fact that the greatest distortions from the heat of the fire had occurred in that area. The neck of the picture tube had cracked and was hanging out of position. Some of the insulation and other material around this portion of the picture tube had burned completely; the remaining material was melted and distorted. Dr. Koopman admitted on cross-examination that he had been mistaken about the extent of the destruction to the deflection yoke that fits over the small end of the picture tube. He intended to refer to the deflection unit. The yoke is but one portion of the unit. He continued to maintain that the most intense heat had occurred in the middle of the set at the small end of the picture tube. He testified that if the fire had started below the picture tube in the chassis, the glass tubes in that area would have cracked from the heat. Many of these tubes were intact and the damage to the chassis area was less pronounced. He eliminated the cord and the electrical outlet as causes of the fire. No fuses were blown. The nature of the parts, which had been repaired or replaced by United, was such that they could not have had a detrimental effect on the picture tube.

Dr. Koopman testified that he could not pinpoint a specific defect because too many parts around the picture tube had been destroyed. However, he noted that there is a small coil in the neck of the television picture tube that must be "red hot" the entire time the set is plugged into the electrical outlet. He further stated that this heat could cause a deterioration in surrounding insulation and electrical components if a defect were present, which in turn would cause greater heat and electrical short circuiting resulting in fire. Based on this knowledge and on the condition in

which he found the television after the fire, Dr. Koopman concluded that such a deterioration had occurred and that "the parts had to be defective or they wouldn't have broken down in that length of time." He also concluded that the initial cause was present when the set was delivered by Sears.

I

The doctrine of strict liability in tort as set forth in the Restatement (Second) of Torts § 402A (1965) has been a part of the law in Missouri since its adoption in *Keener v. Dayton Electric Manufacturing Co.*, 445 S.W.2d 362 (Mo.1969).

 Under this doctrine one who sells a "product in a defective condition unreasonably dangerous to the user or consumer . . . is subject to liability" for injury to the user or the user's property caused by the defect. This doctrine also requires that the seller be in the business of selling the product and that the product reach the user in substantially the condition in which it is sold. *Keener*, 445 S.W.2d at 364.

 As in other tortious actions the burden is upon plaintiffs to prove that there was a defect in the television set and that there had been no substantial change in the condition in which the set was delivered to the consumer. The doctrine of strict liability does not require impossible standards of proof. The proof "must be realistically tailored to the circumstances which caused the form of action to be created." *Lindsay v. McDonnell Douglas Aircraft Corp.*, 460 F.2d 631, 639 [14] (8th Cir. 1972).

 The existence of a defect may be inferred from circumstantial evidence with or without the aid of expert opinion evidence. *Williams v. Ford Motor Co.*, 411 S.W.2d 443, 447 [3] (Mo.App.1966).

 In determining whether plaintiffs presented sufficient substantial evidence for submission to the jury, we must consider the evidence in the light most favorable to the plaintiffs, with all reasonable inferences to be drawn therefrom, and dis-

regard the defendant's evidence unless it aids the plaintiffs' case. *Lifritz v. Sears, Roebuck & Co.*, 472 S.W.2d 28, 31 [2] (Mo. App.1971); *Williams v. Ford Motor Co.*, 411 S.W.2d 443, 445 [1] (Mo.App.1966).

There was ample evidence from which a jury could find that the fire, which damaged the Winters' home, started in the television set. Mr. Winters awakened to find "fire was coming up out of the back of the T.V." The only thing he saw on fire was the back of the television set. He went to get water with which to extinguish the fire, and on his return the wall behind the set was on fire. The fire chief testified that the television set was severely burned and that the wall directly behind the set was "scarred" starting about 8 or 10 inches from the floor. With the establishment of the television set as the source of the fire, the principal issue in this case focuses upon the plaintiffs' proof of a defective condition near the small end of the picture tube and of the existence of that condition when Sears delivered the set to Mr. and Mrs. Winters. Circumstantial evidence may be used to establish the existence of a defective condition. *Lifritz v. Sears, Roebuck & Co.*, 472 S.W.2d 28 (Mo.App.1971). It is held that the testimony of an expert may constitute substantial evidence; and a jury may determine that an incident resulted from a defect rather than from other causes based upon an opinion of a qualified expert that the defect was the more reasonable probable cause. *Lifritz*, 472 S.W.2d at 32.

Appellant argues that plaintiffs' expert had no facts upon which to base his opinion other than the fact that a fire had occurred in a television set that was 2½ years old and had been the subject of repairs. Appellant therefore concludes that Dr. Koopman's opinion was based on mere conjecture and thus lacked the requirements of substantiality and probative force. Defendant would distinguish the present case from those cited by plaintiff, which have allowed recovery without proof of a specific defect, on the grounds that those cases involved products that were new and had not been used over a prolonged period. *See Williams v. Ford Motor Co.*, 494 S.W.2d 678 (Mo.App.

1973) (involving an inference of defective steering in a brand new car); *Lindsay v. McDonnell Douglas Aircraft Corp.*, 460 F.2d 631 (8th Cir. 1972) (applying Federal Maritime law, allowing the inference of a defect in a plane crash occurring the day after its delivery to the Navy).

■ The doctrine of strict liability does not require that the product be "new" at the time of the occurrence. The criteria is that it be in substantially the same condition as when it was delivered to the purchaser.

While the precise facts of the case at bar have not been presented to the courts in Missouri, we note with approval *Bombardi v. Pochel's Appliance & T.V. Co.*, 9 Wash. App. 797, 515 P.2d 540, *modified* 10 Wash. App. 243, 518 P.2d 202 (1973). In *Bombardi*, the purchaser of a "used" television set, manufactured in 1966 and serviced by the dealer several times after the original sale, recovered damages for personal injuries and property loss as a result of a fire in the set in 1970. Applying the doctrine of strict liability in tort, the *Bombardi* court held that even though it was impossible, because of the destruction caused by the fire, to "point an accusing finger at a particular defective component," the plaintiff was not precluded from establishing that the set was defective by means of circumstantial evidence. *Bombardi*, 518 P.2d at 203.

■ We quote with approval the language of *Bombardi*, "the mere fact of an accident, standing alone, does not generally make out a case that a product was defective." *Bombardi*, 518 P.2d at 204. However, common experience tells us that some accidents do not ordinarily occur in the absence of a defect and in those situations the inference that a product is defective is permissible. W. Prosser, Handbook of the Law of Torts § 103, at 673–74 (4th ed. 1971).

In the case at bar, we find that the plaintiffs presented sufficient evidence, apart from the fact of the fire itself, from which a jury could infer the existence of a defect near the small end of the picture

tube, which points "reasonably to the desired conclusion and tend[s] to exclude any other reasonable conclusion." *Hale v. Advance Abrasives Co.*, 520 S.W.2d 656, 658 (Mo.App.1975). The conclusions made by plaintiffs' expert, Dr. Koopman, were not based only on the fact that there was a fire, and of the condition of the material surrounding the picture tube, but more particularly on his observations that certain areas sustained damage in varying degrees. Dr. Koopman also testified as to facts concerning the workings of the picture tube and surrounding components, including the location and characteristics of a heating coil in the neck of the tube. He testified that the defect in the heating element at the small end of the tube was the most probable cause of the fire. We cannot say as a matter of law that these facts lack the legal requirements of substantiality and probative force.

This case is readily distinguishable from the cases relied upon by defendant.[1] In those cases, as contrasted with the case at bar, there were no persons who could by direct evidence or circumstantial evidence confine the origin of the fire to the product which was alleged to be defective. The present case is more akin to *Jacobson v. Broadway Motors, Inc.*, 430 S.W.2d 602 (Mo. App.1968). Although the action was in warranty, the principle announced is applicable here. The court there held that a fire, which started under the hood of an automobile while it was stopped in a parking lot about three months after purchase, gave rise to an inference that the automobile was not properly manufactured; that the fire was caused by defective materials or workmanship. In a like manner, we can say that a television set properly manufactured and properly serviced by the seller does not, in normal operation, combust.

█ "Absolute certainty or positive proof of causation by an expert witness is not required in a products liability case.

The jury may determine that the incident resulted from a defect in the instrumentality, rather than other causes, upon an opinion of a qualified expert that the defect was the more reasonable probable cause." *Lifritz v. Sears, Roebuck & Co.*, 472 S.W.2d 28, 32 (Mo.App.1971). The fact that Dr. Koopman was unable to point to the specific defect because of the destruction of components of the set by the fire made the proof difficult, but not impossible. His opinion, based upon his personal observations, supplemented by the facts supplied by the testimony of Mr. Winters and the fire chief concerning the occurrence and their observations, constitutes sufficient substantial evidence that the fire started in the area of the small end of the picture tube and was caused by a defect. *Gaddy v. Skelly Oil Co.*, 364 Mo. 143, 259 S.W.2d 844 (1953).

II

█ Defendant next argues that there was no evidence to support a finding that the defect was in existence at the time the television set was sold to the Winters.

The Winters had trouble with the set from the time it was installed. Numerous service calls were made by Sears, the seller, during the period of the service contract, as defendant argues "possibly as many as twenty times." Mr. Winters testified that Sears' repairs included replacement of the tuner, transformer, some tubes and resistors; that to his knowledge they did not remove, replace or make any changes in the picture tube or its attachments. He also testified that United made service calls. He did testify that he was not present during every service call. His wife testified that she was employed full time and because her husband was home from work in the afternoons, she made arrangements for service calls to be made when he was at home.

*Gaddy v. Skelly Oil Co.*, 364 Mo. 143, 150, 259 S.W.2d 844, 849 (1953).

1. *Citizens Bank of Festus v. Missouri Natural Gas Co.*, 314 S.W.2d 709, 715, 716 (Mo.1958); *Craddock v. Greenberg Mercantile*, 297 S.W.2d 541, 547, 548 (Mo.1957);

The repairs by United made no changes in or alterations to the picture tube, or to any of the attachments to the picture tube. No one other than Sears and United had worked on the television set.

The jury could have found that neither the purchaser nor any third person had made any substantial changes to the television set which could have been the proximate cause of the fire.

In essence defendant argues that there is a hiatus in plaintiffs' proof in that plaintiffs did not prove that defendant had not substantially altered the product so as to proximately cause the damages to plaintiffs.

This issue raised requires a discussion of Restatement (Second) of Torts § 402A(1)(b) (1965). Section 402A, as pertinent to our consideration, provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

. . . . .

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

There has been very little written with respect to this issue and we have found no case which has determined the issue as it is now presented to us. The question is broached in *Bombardi*. In that case the seller had serviced the used television set for the first owner and had worked on it before the sale to plaintiffs. However, the seller testified that when the used television set involved was sold to the plaintiffs, the set was in the same condition as when it left the manufacturer.

■ The basic premise of § 402A(1)(b) is that the seller may not be held liable for

injuries which are proximately caused by a defect in the product created by alteration of the product by the user or a third person.[2] *See Swindler v. Butler Manufacturing Co.*, 426 S.W.2d 78, 83 [5] (Mo.1968).

■ As was said by the commentator in Annot., 41 A.L.R.3d 1251 § 2, at 1253 (1972):

In line with the general rule that liability for product-caused harm may not be imposed upon a manufacturer or seller in the absence of proof that the product in question was defective or dangerous at a time when the defendant had possession of it or was otherwise responsible for its condition with respect to danger or defect, the courts have held that a manufacturer or seller is not liable for injuries caused by a defective product if the defect was created by an alteration which amounts to an intervening or superseding cause, as distinguished from a concurrent cause, of the injuries.

■ Conversely, the seller may not take the position that, because the set had defects which it attempted to correct, the plaintiff must prove that the seller did not substantially alter the product so as to create a defect which proximately causes the resultant damages.

■ The word "sold" in § 402A(1)(b) does not have the technical meaning but indicates the time at which defendant relinquished control or possession of the product. *See* 2 L. Frumer & M. Friedman, Products Liability § 16A [4], at 3–314 (1976).

■ The seller takes possession of the product when he undertakes to service it.[3] It becomes an extension of the manufacturing process. Upon completion of servicing the product, whether it is done on the seller's premises or on the premises of the purchaser, the effect is a re-delivery of the product with the same assurances and with the same obligations as the original sale.

2. In some instances liability will attach even where the product is altered or changed. *Hales v. Green Colonial, Inc.*, 490 F.2d 1015, 1020–21 [4–5] (8th Cir. 1974). Some courts have rejected the concept of intervening cause and would refer to substantial alterations, which created a defect as mishandling or misuse of the product.

*See Bradford v. Bendix-Westinghouse Automotive Air Brake Co.*, 33 Colo.App. 99, 517 P.2d 406 (1973).

3. *C.f.* 1 R. Hursh & H. Bailey, American Law of Products Liability §§ 1.10, 1.14 (2d ed. 1974).

■ To hold otherwise would defeat the very purpose of the rule of strict liability in tort; one of the primary tenets of that rule is the superior opportunity of the seller to know the condition of the product that he holds out for sale to the consuming public.

■ We hold that once the plaintiff, in a case of strict liability, produces evidence that neither he nor any third person has made alterations to the product, which would create a defect that could be the proximate cause of the damages incurred, he has made a submissible case as to the issue of the existence of a defect at the time of sale or delivery of the product.

In the case before us, the plaintiffs' evidence was sufficient to permit the jury to find that neither plaintiffs nor any third person had substantially altered the television set so as to cause the defect which produced plaintiffs' damages.

The court did not err in submitting the case to the jury on the theory of strict liability.

### III

■ Defendant complains the court erred in overruling its objection to the hypothetical question that plaintiffs asked Dr. Koopman because it included the assumption that the picture tube and its attachments had not been removed, repaired or replaced at any time before the fire. This contention is based on Mr. Winters' testimony that he was not present on all occasions when repairs were made, which "necessarily means that he does not know what was done by the repairmen on the occasions when he was not there."

Since the purpose of a hypothetical question is to elicit the opinion of an expert, the facts essential to his opinion must be assumed in the question. The essential facts assumed must have an evidentiary basis. *Hamilton v. Slover*, 440 S.W.2d 947, 955 [9] (Mo.1969). *See* 31 Am.Jur.2d *Expert and Opinion Evidence* § 56 (1967). Rational inferences drawn from the testimony as well as positive testimony may be the basis for a hypothetical question. *Schmitt v. Pierce*, 344 S.W.2d 120 (Mo.1961).

In this case plaintiffs' question assumed that no one, including Sears, removed, repaired or replaced the picture tube or its attachments. The defendant argues that Mr. Winters testified that he was not present at all times when the set was repaired; that Mrs. Winters was never present during repairs because she was at work and that they were the only witnesses to the repairs, thus there was no evidence to support the assumption.

We note first that the repairman from United testified that the repairs, which he made, could have had no affect on the picture tube and its attachments.

The defendant relies on the testimony of Mr. Winters to prove that plaintiff was not always present when repairs were made, but was there most of the time when Sears was present.[4] The only specific testimony, which indicates Mr. Winters did not see what was going on, was his statement that he was in his room the first time the United repairman came. Mrs. Winters testified that she was never at home when Sears came out; she worked during the day and that "[she] would make the arrangements for [the Sears repairman] to come out after

4. "Q. You were asked about repairs made to the set, and you described some items, and I believe you indicated that you were not always there, but you were there most of the time when the Sears' people came to repair it?
A. Yes, sir.
Q. And do you know just what was done when they came to repair it?
A. At all times?
Q. Yes.
A. No, sir.
Q. All right. Now, you said you could see in the back—you could see—well, excuse me,

when the United Television man came—were you there when he came—I don't mean in the house—were you present in the room when he came to repair the set at the house and then took part of it with him? Did you see that done?
A. I was in the bedroom when he came that night.
Q. You did not see what he did, but you know he was there, and you know he took part of the set away?
A. Yes, sir."

my husband got off [work]." The trial judge was present and heard this evidence and was in the best position to conclude that the testimony, as a whole, warranted an inference sufficient to sustain the assumption.

Even if we were to conclude that there was no basis in the evidence for an assumption that Sears had not removed, repaired or replaced the picture tube, we, contrary to defendant's contention, find no prejudice to defendant by its inclusion in the hypothetical question.

Defendant argues: "In order for plaintiff to have an expert testify that in his opinion the defect which allegedly caused a fire to start at the small end of the picture tube was a defect which existed at the time of sale, it was necessary that plaintiff prove and submit to the expert that the picture tube and its attachments had not been removed, repaired, or replaced at any time before the fire." It is clear from what we have said under Point II above, proof that Sears had made no substantial alterations to the picture tube was not material to plaintiffs' cause of action. In like manner, the assumption respecting Sears was not essential to the opinion of plaintiffs' expert. The inclusion of this assumption was not prejudicial. *Sanders v. H. & S. Motor Freight, Inc.*, 526 S.W.2d 332, 335 [2] (Mo. App.1975).

### IV

 Defendant also attacks the verdict directing instructions of plaintiffs Winters and of plaintiff Western Casualty Co. The basis of the attack is that the evidence was insufficient to sustain a finding that at the time of the fire the television set was in substantially the same condition as when it was sold by defendant. Our previous discussion, under Points I and II of this opinion, effectively answers the contention contrary to defendant's argument.

The trial court for reasons not before us granted defendant a new trial on the measure of damages only. This issue has been held in abeyance pending this appeal. Finding no prejudicial error, we affirm the judgment of the trial court respecting the issues here determined and remand for trial on the issue of damages.

McMILLIAN, P. J. and RENDLEN, J., concur.