Archie **WILLIAMS**, Plaintiff-Respondent,

v.

**DEERE AND COMPANY**,
Defendant-Appellant.

No. 11269.

Missouri Court of Appeals,
Southern District,
Division Three.

April 24, 1980.

Motion for Rehearing and for Transfer
Denied May 14, 1980.

Application to Transfer Denied
June 10, 1980.

Joe Welborn, James E. Spain, Briney, Welborn & Spain, Bloomfield, for plaintiff-respondent.

W. H. Winchester, III, Blanton, Rice, Sickal, Gilmore & Winchester, Sikeston, for defendant-appellant.

PREWITT, Judge.

In this action, based on strict liability in tort, plaintiff received a $75,000.00 jury verdict and judgment. He claimed that due to a defect, a tractor manufactured by defendant rolled and injured him after he had placed its gearshift lever in "park" before alighting from it.

Defendant claims the trial court erred in not directing a verdict for it because: (a) there was no evidence of a defect in the tractor when manufactured and no evidence that the tractor was in the same condition at the time of injury; (b) plaintiff's circumstantial evidence of a defect was insufficient as it did not establish circumstances which tended to exclude any other reasonable conclusion regarding the cause of the injury; and (c) plaintiff voluntarily and unreasonably placed himself in a position of danger which directly caused or contributed to cause his injuries.

■ Defendant also filed before us a motion to strike from the transcript a statement of one of plaintiff's attorneys concerning the jury's view of the tractor. The record shows that at the trial defendant's counsel requested that the court allow the jury to "look at this tractor and to start it and examine it and see exactly how much force it takes for this tractor to be palced [sic] in and out of park and in and out of gears." Plaintiff's counsel stated that they had no objection to this. The trial judge and counsel discussed the details of the examination and agreed that Marvin Strapman, a John Deere mechanic and service manager who had just testified, would operate it. The demonstration is described in the transcript as follows:

"At this point the Court, jury, baliff, all attorneys and reporter are taken out on the parking lot where the tractor in question is located on a truck. The truck bed is tilted and Mr. Strapman starts tractor and backs it off truck. Mr. Spain talks to Mr. Strapman. Two or three jurors get up on tractor, with Mr. Strapman still on tractor, and do some shifting of gears.

Because of the noise of the tractor and all of the different conversations going on at the same time it was impossible to make a record of this demonstration."

Four months after the trial the parties appeared before the trial judge and plaintiff's counsel announced that he and defendant's attorney were unable to agree as to what occurred when the jury viewed the tractor. He asked the court to make a determination under Rule 81.12(c), V.A.M.R., as to what should be in the transcript. Plaintiff's counsel was sworn and over defendant's objection stated what he believed occurred. Following that, the court commented:

"There were several demonstrations taking place on the parking lot. Several jurors were on the tractor. Mr. Spain was on the tractor. Several of the defendant's witnesses were conducting demonstrations, taking the tractor in and out of gear, as was Mr. Spain, and I believe that several jurors got on the tractor and did likewise. Of course, that was impossible to record on a verbatim transcript. And therefore, I am unable to rule on the correctness of this transcript."

While no reason appears for us to doubt the truth of plaintiff's counsel's statement, we find no basis in the rules for us to consider it. His statement was not a part of the trial, and while it relates to what occurred during the trial, what the jurors saw or did could be subject to many conclusions and interpretations. What each individual juror saw might be different. We do not find any authority for the court to hold a hearing and determine after the fact what occurred during a view or demonstration. We believe that we should only consider what was recorded at the time of the view and demonstration and will not consider plaintiff's counsel's sworn statement. The motion to strike is sustained.

Plaintiff was employed by the purchaser of the tractor, Howard Chrisman. On August 30, 1975, plaintiff was using the tractor to pull a cultivator over a level soybean field. Two bolts held the cultivator to the

tractor and one of them broke. Plaintiff stopped, placed a gearshift lever in "park" and got off the tractor. After determining that a bolt had broken, he looked on the tractor for a replacement bolt. Not finding one, he decided to leave the cultivator in the field and drive the tractor to get another bolt. He then unfastened the other bolt holding the cultivator and was pulling a hydraulic hose to release it from the tractor when the tractor rolled back and pinned him between one of its tires and the cultivator, causing serious injuries to a leg. Plaintiff was pinned for several hours. When he was found, the gearshift lever was not in park. Plaintiff offered evidence that when another employee was operating the tractor it "jumped out of park", and prior to the date that plaintiff was injured, he had had it "jump out of gear going down the road". Mr. Chrisman had purchased the tractor in November of 1973 from Wirley Implement Company in Dexter, Missouri. From the time he bought the tractor until plaintiff was hurt, he believed there was no substantial change made in the gears on the tractor. All repair work on the tractor during that period was done at Wirley Implement Company. Marvin Strapman, the service manager at Wirley Implement Company, stated that they did not work on the section of the transmission relating to putting the tractor in "park". They had not done any work on the transmission relating to the shifting of either lever and to his knowledge they were "exactly the way they were when it came from John Deere factory." He said the purpose of park is to keep the tractor from rolling forward or backward. Mr. Strapman testified that when the lever is placed in park it is supposed to lock in place and that if you can take your finger and tamp the gear out of park, that it is a defect. If the tractor was in park and running you could not take it out of park without pushing in on the clutch. Other facts will be mentioned in the course of the opinion.

■ Defendant contends that there was no evidence of a defect which caused plaintiff's injury and that no defect was shown at the time the tractor left defend-

ant's factory. Strict liability in tort was adopted in Missouri by *Keener v. Dayton Electric Manufacturing Company*, 445 S.W.2d 362 (Mo.1969). The doctrine of strict liability in tort does not require impossible standards of proof. The proof must be realistically tailored to the circumstances. *Winters v. Sears, Roebuck and Co.*, 554 S.W.2d 565, 569 (Mo.App.1977). The existence of a defect may be inferred from circumstantial evidence with or without the aid of expert evidence. *Williams v. Ford Motor Company*, 411 S.W.2d 443, 447 (Mo.App.1966). Considering the evidence and the reasonable inferences from it in the light most favorable to plaintiff, we believe that the evidence was sufficient to show that a defect likely caused plaintiff's injury. There was evidence that the tractor was placed in park on level ground and that it should not roll when in park. Common experience tells us that some accidents do not ordinarily occur in the absence of a defect and in those situations the inference that a product is defective is permissible. *Winters v. Sears, Roebuck and Co., supra*, 554 S.W.2d at 570. If it had been operating correctly it should have stayed in park and not rolled. Based on the evidence, the jury could reasonably find that there was a defect in the tractor which caused plaintiff's injury.

■ We now consider whether the evidence is sufficient to show that the tractor was in substantially the same condition when plaintiff was injured as when it was manufactured. Strict liability in tort does not require that the product be new at the time of the occurrence but that it be in substantially the same condition as when it left defendant. *Winters v. Sears, Roebuck and Co., supra*, 554 S.W.2d at 570; *Williams v. Ford Motor Company*, 494 S.W.2d 678, 680 (Mo.App.1973). The owner thought that there had not been any substantial change in the gearshift mechanism and the gears since he owned it. Defendant's expert witness, the service manager and mechanic who worked on the tractor, said that to his knowledge the gearshift levers were still exactly the same as when the tractor

came from defendant's factory. While some of their testimony contained conclusions, no objection was made; both were in a position to know this information and we consider this testimony in determining if a submissible case was made. *Bourne v. Manley*, 435 S.W.2d 420, 428 (Mo.App.1968). The park position is used to prevent movement of the tractor, and if it does not function properly serious injury to those on or about the tractor could occur. Common experience would indicate that such a device, on which the safety of those around the tractor may depend, should last more than two years unless alteration or some type of unforeseeable interference occurred affecting its proper manner of operation. There was at least circumstantial evidence that neither occurred.

■ If plaintiff produces evidence that there were no alterations to the product which would create a defect that could be the proximate cause of the damages incurred, he makes a submissible case as to the existence of the defect at the time of sale. *Winters v. Sears, Roebuck and Co.*, supra, 554 S.W.2d at 573. We think that the evidence was sufficient for the jury to find that there were no substantial alterations in the tractor since it left defendant which would have created a defect that might have caused this plaintiff's injury and that no outside force or object interfered with the use of the park mechanism. Therefore, they could find that this defect existed when the tractor left defendant.

■ We next consider whether the evidence establishes as a matter of law that plaintiff's recovery is barred due to his contributory fault. Again, we view the evidence and the reasonable inferences in the light most favorable to plaintiff. Defendant contends that by going between the tractor and the cultivator plaintiff voluntarily placed himself in a position of danger, knowing of the alleged defect. Plaintiff testified that the tractor had jumped out of gear as he was driving it down the road. He thought this was caused by vibration. Before he was injured he had no knowledge of it "jumping out" of park. There was no evidence to show that he knew that the tractor might roll when placed in park or that the gearshift lever might "jump out of park". Absent such knowledge, a person in this situation would ordinarily go between the tractor and the equipment it was pulling and would not usually be in danger unless there was a defect. Where the evidence does not show that plaintiff knew the product to be defective, he is not guilty of contributory fault by voluntarily exposing himself to a dangerous situation. *Keener v. Dayton Electric Manufacturing Company*, supra, 445 S.W.2d at 365; *Williams v. Ford Motor Company*, 454 S.W.2d 611, 619 (Mo. App.1970). What occurred had not happened to plaintiff before. As plaintiff did not know of this defect, we cannot say as a matter of law that he was unreasonably using the tractor. See *Higgins v. Paul Hardeman, Inc.*, 457 S.W.2d 943, 948–949 (Mo.App.1970).

The judgment is affirmed.

All concur.