Bonnie J. WILLARD, et al., Plaintiffs,

v.

BIC CORPORATION, et al., Defendants.

No. 89–3401–CV–S–4.

United States District Court,
W.D. Missouri, S.D.

Aug. 14, 1991.

William J. Fleischaker, Roberts, Fleischaker & Williams, Joplin, Mo., for plaintiffs Bonnie and William Willard.

Patrick K. Roberts, Daniel, Clampett, Lilley, Dalton, Powell & Cunningham, Springfield, Mo., for defendant Bic Corp.

Gary C. Lentz, Spencer, Scott & Dwyer, P.C., Joplin, Mo., for defendant Societe Bic, S.A.

## ORDER

RUSSELL G. CLARK, Senior District Judge.

Before the Court is defendant Bic Corporation's motion for summary judgment. Plaintiffs Bonnie and William Willard filed suggestions in opposition to defendant's motion for summary judgment and Bic filed reply suggestions in support of its motion. This Court will grant Bic's motion for summary judgment.

This is a products liability action in which plaintiffs Bonnie and William Willard claim damages from a boat fire which ignited when Mrs. Willard attempted to light a cigarette with a Bic lighter within seconds after fueling a boat from a dockside pump. Plaintiffs claim that the lighter malfunctioned causing the fire. Defendant Bic claims that the boat fire was the result of an accumulation of gas fumes in the boat. Lay and expert witness depositions have been completed and discovery is closed.

## FACTS

In February 1987, plaintiffs bought a 1979 Newman runabout boat. The boat was a sixteen foot, open bow, outboard. The motor was a 90 horsepower Mercury fueled by a permanent gas tank of unknown capacity. The fuel tank was filled through a hole in a horizontal gunwale. Mr. Willard did not believe the boat had a blower to evacuate gas fumes. (Willard depo. at 60–61).

At the end of the 1988 boating season, Mr. Willard discovered that the bilge pump was not working. Mr. Willard had the pump fixed and the motor tuned in March of 1989 at Star Marine in Cassville, Missouri. Star Marine did not work on the fuel lines or gas tank. Mechanic Bill Berg testified that he inspected the fuel line and noted that it had no leaks, damage or cracks. (Berg depo. at 14–17).

On April 17, 1989 Mrs. Willard purchased a Bic lighter from a Venture store in Joplin, Missouri. Mrs. Willard stated that she had read the warnings and instructions on the cellophane package, as well as the warnings on the body of the lighter itself. (Willard depo. at 9–10). Mrs. Willard estimated that she used the lighter approximately 210 times after she purchased it. (Willard depo. at 15).

On the morning of April 25, 1989 Mrs. Willard used her lighter twice before the accident. At approximately 8:00 a.m., the Willards arrived at the marina to put gas in their boat. Mr. Willard stated that the temperature was about sixty degrees and the weather conditions were windy and hazy. Chuck Edwards came out to the Willard's boat and handed Mr. Willard the gas pump. Mr. Willard added oil and filled the tank with six gallons of gas. Mr. Willard started the motor and idled away from the dock.

Mr. Willard estimated that he and his wife were approximately fifty to sixty yards from the dock when the incident occurred. Mrs. Willard stated that she placed a cigarette in her mouth, covered the cigarette with her left hand in order to shield the cigarette from the wind and lit the lighter with her right hand. Mrs. Wil-

lard testified that the accident occurred as follows:

Q: And did you light the cigarette while you were seated in the passenger seat?
A: Yes.

\* \* \* \* \* \*

Q: [L]et me have you tell me what happened when you went to light the lighter.
A: When I went—when I struck it, the next—first thing I knew I was just on fire from my waist up, and I was looking through flames, and so I jumped up. My first thought was drop and roll like they tell you, and I turned around to do that in the aisle and as I did I saw the water and I decided that was better, so I just jumped up on the seat and dove overboard.
Q: What was the first thing that caught on fire in your recollection of it?
A: Everything caught at the same time.
Q: By "everything" you're referring to what?
A: My jacket—well, it actually was the jacket and then that went up because I was looking through fire, my hair caught on fire then.

\* \* \* \* \* \*

Q: Did you have the opportunity to observe the flame that came out of the lighter?
A: No. I didn't see a flame. I just— suddenly I was the flame.
Q: You were engulfed in flame suddenly?
A: Yes, uh-huh.

(B. Willard Depo. at 23–25).

Individuals on the marina dock stated that they heard a "whoof" or "whoomf" sound come from the direction of the Willard's boat and saw that it was engulfed in flames. (C. Edwards depo. at 17–20; T. Clayton depo. at 9–12; E. Borland depo. at 10–15). Mr. Willard described the ignition of the fire as a "fffoom."

Mrs. Willard suffered burns on her face, forearms and ankles. Mr. Willard suffered minor burns on his leg. The boat burned to the water line. The Willards did not recover the lighter after the accident.

## CLAIM

Plaintiffs brought this action against Bic Corporation alleging claims for strict liability and negligence. Plaintiffs claim that Bic negligently designed, marketed, advertised, sold and promoted the subject lighter and failed to provide adequate warnings. Plaintiffs also claim that Bic defectively designed and manufactured the lighter rendering it unreasonably dangerous. Plaintiffs further allege that Bic violated the Merchandising Practices Act, Mo.Rev.Stat. § 407.010, *et seq.*, claiming that Bic omitted or concealed information about its lighters. Plaintiffs have also asserted a claim for punitive damages.

There are well settled principles in ruling a motion for summary judgment. Summary judgment is appropriate when there is no genuine issue of material fact present in the case and judgment should be awarded to the party seeking the motion as a matter of law. *Camp v. Commonwealth Land Title Ins. Co.*, 787 F.2d 1258, 1260 (8th Cir.1986). However, because summary judgment remedy is drastic, it should not be granted unless the moving party has established the right to a judgment with such clarity that there is no room for controversy. *Umpleby v. United States*, 806 F.2d 812, 814 (8th Cir.1986). In addition, the party opposing summary judgment motions may not rest upon the allegations in their pleadings. The nonmovant must resist the motion by setting forth specific facts showing there is a genuine issue of fact for trial. Fed.R.Civ.P. 56(e); *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). In *Agristor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir.1987), the Court stated that such a motion is to be viewed in the light most favorable to the opposing party who also must receive the benefit of all reasonable inferences to be drawn from the underlying facts. In *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) the court held that summary judgment is mandated against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. "In such a situation, there can be 'no genuine issue as to any material fact' since a

complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."

In ruling a motion for summary judgment, the Court does not decide material factual issues, rather it determines whether or not they exist. *Columbia Union Nat'l Bank v. Hartford Accident & Indem. Co.*, 669 F.2d 1210, 1212–13 (8th Cir. 1982). Summary procedures are appropriate where the issues for resolution are primarily legal rather than factual. *Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.*, 824 F.2d 582, 585 (8th Cir.1987), *cert. denied*, 484 U.S. 1010, 108 S.Ct. 707, 98 L.Ed.2d 658 (1988). Issues of fact must be material to a resolution of the dispute between the parties; where the only disputed issues of fact are immaterial to the resolution of the legal issues, summary judgment is appropriate. *Id.* at 585.

With these standards in mind, the Court will proceed to consider defendant's motion for summary judgment.

ARGUMENT

Bic asserts that summary judgment is appropriate in this case because plaintiffs cannot submit sufficient evidence to support their claims. Plaintiffs claim that Bic was negligent in the manufacture and design of the lighter and claim that the lighter was unreasonably dangerous due to defective design. Specifically, Mrs. Willard claims that this negligence and defect caused her to suddenly become engulfed in flames when she lit her cigarette with the lighter. However, Bic asserts that there is no causal relationship between the occurrence of this incident and any alleged defect in the lighter.

In order to prove their negligence claim, plaintiffs must establish the following elements:

1. A legal duty on the part of the defendant to conform to a certain standard of conduct or protect others against unreasonable risks;
2. A breach of that duty;
3. Proximate cause between the conduct and the resulting injury; and

4. Actual damages to plaintiff's person or property.

*Hoover's Dairy, Inc. v. Mid–America Dairymen, Inc.*, 700 S.W.2d 426, 431 (Mo. 1985) (en banc).

■ In order to prove their claim of strict liability plaintiffs must prove the elements outlined in the Restatement (2d) of Torts § 402(a) (1976), adopted by the Missouri Supreme Court in *Keener v. Dayton Elec. Mfg. Co.*, 445 S.W.2d 362, 364 (Mo. 1969). *Keener* and its progeny have established essentially four elements central to plaintiff's burden of proof in strict liability cases.

1. That the product when sold was in a defective condition unreasonably dangerous for its intended use;
2. That the product reached the user without substantial change from the condition in which it was sold;
3. That the accident was proximately caused by the defective condition; and
4. That the product was being used at the time of the accident in a reasonably intended manner.

■ Under negligence or strict liability, one essential element that the plaintiff must prove in a products liability case is that the defect in the product or the negligence of the manufacturer was the proximate cause of the injuries sustained by the plaintiff while he was using the product in a reasonably intended manner. *Garrett v. Jos. Schlitz Brewing Co.*, 631 S.W.2d 652, 654 (Mo.Ct.App.1982).

■ In order to meet their burden of proof, plaintiffs must adduce sufficient evidence to support every element of each of their claims. *Church v. Martin–Baker Aircraft Co., Ltd.*, 643 F.Supp. 499 (E.D.Mo.1986). In addition, plaintiffs cannot premise the case on mere conjecture and speculation, but "must establish it by substantial evidence of probative value, or by inferences *reasonably* to be drawn from the evidence." *Aetna Casualty & Surety Co. v. General Elec. Co.*, 581 F.Supp. 889, 895 (E.D.Mo.1984), *aff'd*, 758 F.2d 319 (8th Cir.1985). The facts presented or inferred must tend to exclude all other reasonable

conclusions. *Aetna Casualty,* 758 F.2d at 322–23.

Bic asserts that it would be speculation and conjecture for a jury to determine causation where an equally plausible explanation for the accident exists, where plaintiff's experts have not based their testimony on admissible evidence but have engaged in speculation and conjecture and where there is no product for examination.

■ It is plaintiff's burden to prove that the lighter malfunctioned and that such malfunction was the proximate cause of plaintiff's injuries. Plaintiffs must also negate any other reasonable conclusion that may be drawn from the facts. *Zafft v. Eli Lilly & Co.,* 676 S.W.2d 241, 244 (Mo.1984) (en banc). Bic states that not only have plaintiffs failed to demonstrate that a lighter malfunction was the proximate cause of the accident, plaintiffs have also failed to demonstrate that gasoline fumes were not the source of the accident. This is crucial where, as here, there are two equally plausible causes of the accident.

> If the injury may have resulted from one of two causes, for one of which, and not the other, the defendant is liable, the plaintiff must show with reasonable certainty that the cause for which the defendant is liable produced the result; and, if the evidence leaves it to conjecture, the plaintiff must fail in his action.

*Zafft,* 676 S.W.2d at 246.

■ Evidence which points equally to a cause for which the defendants are responsible and to one for which the defendants are not responsible is not sufficient to make a case of strict liability in tort for submission to a jury. *Hale v. Advance Abrasives Co.,* 520 S.W.2d 656 (1975).

In *Hale,* the plaintiff brought a strict liability action against a grinding wheel manufacturer for personal injuries he suffered when the wheel disintegrated. Remnants of the wheel were still in existence but there was no direct evidence of plaintiff's claimed defect—bad cryolite. Defendant claimed that plaintiff's testimony showed that the grinder's excessive speed, and not the bad cryolite, caused the disinte-

gration. At trial, the jury returned a verdict for defendants.

Plaintiff appealed claiming that circumstantial evidence was sufficient to establish a defect. On appeal, the court held that when a plaintiff relies on circumstantial evidence he has the burden of establishing circumstances from which the facts necessary to prove his claim may be inferred. However, the defect must be inferred without resort to conjecture and speculation. The circumstances must point reasonably to the desired conclusion and must tend to exclude other reasonable conclusions.

The plaintiff in *Hale* presented evidence that bad cryolite might have caused the accident, but there was also evidence that there could have been a malfunction of the grinder tool, a cause for which the defendants would not have been responsible. Therefore, the *Hale* court concluded that a determination of which of these factors caused the disintegration of the wheel would be a matter of conjecture and speculation.

■ Bic asserts that in the case at bar there are two equally plausible theories of causation, one cause for which the defendant Bic would not be responsible. The evidence indicates that within seconds of refueling the boat, Mrs. Willard attempted to light a cigarette with her lighter. She was suddenly engulfed in flames but did not see a flame coming from the lighter. (B. Willard depo. at 25). Two eye-witnesses testified that they heard a "whoof" or "whoompf" upon ignition of the fire and that the entire boat, from cockpit to transom, was aflame in seconds. (T. Clayton depo. at 9–12; E. Borland depo. at 10–15). Mr. Willard described the sound as when you light a barbecue grill: "ffoom." (W. Willard depo. at 98). The fact that at least two equally plausible theories of the cause of the accident exist does not allow the Willards to get to the jury on the issue of causation.

In support of the malfunction theory, plaintiff has presented to the Court, the testimony and opinions of plaintiff's proposed experts. Plaintiff cites *Hughes v. American Jawa, Ltd.,* 529 F.2d 21 (8th

Cir.1976) for its holding that an expert's deposition testimony concerning possible causes of an accident raises unresolved factual issues sufficient to preclude entry of summary judgment in a products liability action.

■ In addition, expert testimony that a defect in a product was the probable cause of an incident may constitute substantial evidence such that a jury could find that the incident in question resulted from a defect in a product rather than from other causes. *Klein v. General Elec. Co.,* 714 S.W.2d 896, 900 (Mo.Ct.App.1986). Plaintiff also notes that the basis of an expert's opinion may be derived from numerous sources including the opinions of others. Generally, weaknesses in the factual underpinnings of an expert's opinion go to the weight and credibility of his testimony.

■ However, the facts upon which an expert's opinion is based must measure up to the legal requirements of substantiality and probative force. The question whether such opinion is based on and supported by sufficient facts or evidence to sustain the same is a question of law for the court. *Fahy v. Dresser Indus. Inc.,* 740 S.W.2d 635, 650 (Mo.1987) (en banc). An expert's opinion "is in the nature of a conclusion of fact, but it must have a substantial basis in the facts actually established." *Fahy,* 740 S.W.2d at 650.

■ Thus, although Rule 703 has expanded the acceptable bases of expert opinion at common law, this expansion does not extend to make summary judgment impossible whenever a party has produced an expert to support its position. *Viterbo v. Dow Chemical Co.,* 826 F.2d 420, 422 (5th Cir.1987). Accordingly, while questions relating to the bases and sources of an expert's opinion affect the weight to be assigned to that opinion, in some cases the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion. The court may inquire into the reliability and foundation of any expert opinion to determine admissibility.

In *Garrett v. Jos. Schlitz Brewing Co,* 631 S.W.2d 652 (Mo.Ct.App.1982), the Missouri Court of Appeals sustained the trial court's directed verdict on the basis that the plaintiff failed to show proximate cause. Plaintiff claimed that an outdoor electrical sign, which produced an electrical shock causing plaintiff to fall ten feet, was defective and caused plaintiff's injuries. Plaintiff claimed that water had accumulated inside the sign which caused an electrical short circuit. Plaintiff's expert testified that, in his opinion, water accumulation in the sign was a likely cause of plaintiff's injury.

However, the expert had never observed the sign and could not testify as to the condition of the sign at the time of the accident. Moreover, the expert's conclusion was based on the assumption that there was water in the sign on the day of plaintiff's injury. The Court of Appeals stated that the expert's opinion assumed that there was water in the sign. However there was no evidence which tended to establish the presence of water in the sign.

■ The Missouri Supreme Court has ruled that an expert's opinion as to the cause of damage must be a conclusion of fact and must have a substantial basis in facts actually established by the evidence. The opinion of an expert may not be invoked to establish facts that are missing from plaintiff's case and which form the basis of the expert's opinion. *Craddock v. Greenberg Mercantile, Inc.,* 297 S.W.2d 541, 548 (Mo.1957). In other words, an expert's opinion may not be invoked to establish a fact that cannot be proven by other competent evidence. *Id.* 631 S.W.2d at 655.

Further instructive on the issue of expert testimony is *Hargan v. Sears, Roebuck & Co.,* 787 S.W.2d 766 (Mo.Ct.App.1990). In *Hargan,* the plaintiff brought a personal injury action against a department store and escalator manufacturer. Plaintiff claimed that her fall was caused by an optical illusion which resulted from defendant's failure to have working foot lights on an escalator. The trial court did not allow plaintiff's expert to testify because

his opinion was based upon speculation. The Missouri Court of Appeals affirmed the trial court commenting that the record was devoid of facts supporting the expert's opinion and the expert's opinion merely presumed what the plaintiff saw. The expert admitted that he had no way of knowing within a reasonable degree of certainty what the plaintiff saw.

*Mid–State Fertilizer Co. v. Exchange National Bank of Chicago*, 877 F.2d 1333 (7th Cir.1989), rejected an expert's affidavit on the basis that it was conclusory and insufficient to establish a genuine issue of material fact. The Court of Appeals affirmed emphasizing the lack of facts and inferential process of the expert's opinion; "an expert's declaration, full of assertions, but empty of facts and reasons, won't get a case past a motion for summary judgment, for the judge must look behind [the expert's] ultimate conclusion ... and analyze the adequacy of its foundation." *Id.* at 1339.

 Thus, it is clear that an expert's interpretation and opinions which are not supported by the evidence are insufficient to create questions of fact for the jury. With these principles in mind, the Court will address plaintiff's proposed experts.

### Mr. Warman

 Plaintiff's accident reconstructionist, Mr. Michael Warman, testified that in his opinion, accumulation of gas fumes was not the cause of the fire. Mr. Warman did not consider the timing, sequence or atmospheric conditions which would have an effect on gas fume accumulation and Mr. Warman admitted that he would be speculating without knowledge of such factors. (Warman depo. at 46–47, 79–80).

Bic asserts that Warman's testimony is speculative and conjectural. Bic argues that not only is Warman's opinion incompetent, it is outside the realm of any expertise which Mr. Warman might possess. Mr. Warman offers his testimony that the lighter malfunctioned. However, Mr. Warman has never before testified in a lighter case and does not consider himself to be an expert in the manufacture and design of lighters. (Warman depo. at 47).

Mr. Warman admitted that he could not determine whether there was a leak in the engine or gas lines or whether there was anything wrong with the motor or the engine. (Warman depo. at 81–82). Warman also admitted that he could only speculate with respect to several crucial factors concerning dissipation of gas fumes. Warman testified that he did not know the boat speed as the Willards were pulling away from the dock:

Q: So at this point it would be pure speculation for you to say that fumes dissipated at a certain rate or dissipated at all?

A: That's correct.

Furthermore, the testimony of Bonnie Willard does not support Mr. Warman's theory. Mrs. Willard stated that when she lit the lighter the first thing she knew was that she was on fire and she did not see a flame. (B. Willard depo. at 24–25). Mr. Warman claims that accident reconstruction supports the malfunction theory even though there is no testimony to support this theory.

There appears to be no reliable basis for Mr. Warman's opinion which has no underlying facts to support it. Mr. Warman has little or no knowledge regarding lighters and did not have an occasion to examine the lighter. The shortcomings of Mr. Warman's testimony go not to his credibility but to his ability to assist the jury. However, speculation will not assist the jury. Opinions are valueless as evidence without exploration of the underlying facts and rationale showing the path from fact to opinion. *United States v. R.J. Reynolds Tobacco Co.*, 416 F.Supp. 316, 325 (D.N.J. 1976).

### Mr. Sanders

 Plaintiff's second proposed expert is a water patrolman who arrived at the scene of the accident when the boat was not on fire, but was still smoking from the accident. Mr. Sanders' examination of the boat revealed that the gas tank was still intact and still had fuel in it. Mr. Sanders concluded that the point of origin of the

fire was the cigarette lighter but did not draw any conclusion regarding whether the lighter malfunctioned. (Sanders depo. at 331–32).

Mr. Sanders testified that gas fumes generally produce a flash fire and stated that it was rare for an outboard motor boat to catch on fire. Mr. Sanders added that on the day of the accident it was windy "so if there were a lot of fumes in the boat that would help getting them out." (Sanders depo. at 23–24).

Q: If the facts were such that it showed that Mr. and Mrs. Willard were both seated in the driver's seat and the front passenger seat of the boat in question facing forward, and that there was no source of gasoline in the boat other than the motor and what would be in the fuel line and the gas tank, under those circumstances, was the fact that Mr. Willard was not burned in a similar manner a significant factor as far as you were concerned?

A: Yes, sir, it was. Being the only gas tank in the boat was in the back of the boat, I found no evidence of any other type of fumes up there, what remains that I had there and just the—from what—witness statements and stuff, you know.

\* \* \* \* \* \*

A: From the position they were in, if a gas-related fire happened in the boat and they were where they were at or where they stated they were at, in the front of the boat, generally, without going back to the origin of the fire which would be in the back of the boat, actually walking back there, you know, if it was a flash fire and they were seated they would possibly have burns to the back of the arms, back of the neck, if they were standing, had shorts on, which ever exposed points of flesh there was, that didn't have something to block it like a seat or some article of something like that nature. (Sanders depo. at 31–32).

Mr. Sanders expert testimony is ambiguous and inconclusive at best. Moreover, in his testimony, Mr. Sanders expressly disqualified himself as an expert in the reconstruction of boat fires.

Q: So you don't consider yourself an expert with respect to watercraft fire or reconstruction of watercraft fire accidents?

A: No, sir.

\* \* \* \* \* \*

Q: And again you don't consider yourself an expert in the reconstruction of boat fires, do you?

A: Not an expert, no.

(Sanders depo. at 27, 32). Self-disqualification takes Mr. Sander's opinions outside the realm of expert testimony and places his testimony in the category of a lay witness. Lay witnesses are not capable of rendering such opinions. Mr. Sanders essentially admits that his opinion is merely guesswork.

Q: So your opinion in this case is in large part a guess on your part as to how the accident may have occurred?

A: Just with what experience and what I could gain out—throughout the investigation, yes, sir.

Mr. Sanders has not demonstrated that he has any expertise in the area of lighter malfunction or fire reconstruction. Mr. Sander's testimony suffers from the same weaknesses as Mr. Warman's testimony and would not be helpful to a jury. The shortcomings of Mr. Sanders' testimony go not to his credibility but to his ability to assist the jury.

### Dr. Geremia

█ Plaintiff's third proposed expert is Dr. Geremia. Dr. Geremia concluded that the accident was caused by a "malfunction of the lighter that caused an uncontrolled ejection of the . . . fuel." (J. Geremia depo. at 4). Dr. Geremia testified that in formulating his opinion he considered Warman's reconstruction of the accident, the investigative report and deposition transcript of Terry Sanders, various pleadings, medical records, statements of various witnesses and a work order from Star Marine.

The mechanism of this malfunction was, in Dr. Geremia's estimation, caused by a "loss of flow control in which an excessive amount of fuel comes out, in fact excessive

enough so that liquid gets past the orifice and some into the jet." (J. Geremia depo. at 79). Dr. Geremia registered his opinion that the lighter malfunctioned notwithstanding his testimony concerning the basis for his opinion.

Q: Have you done any testing in connection with this case?

A: No.

\* \* \* \* \* \*

Q: Have you visited the scene of the accident, Doctor?

A: No.

Q: Have you inspected the boat involved in the accident?

A: No.

Q: Have you interviewed any witnesses relating to this accident?

A: No.

Q: Have you talked with Mrs. Willard regarding the accident?

A: No.

Q: Have you talked with Mr. Willard regarding the accident?

A: No.

Q: Have you conferred with any other experts or consultants regarding this case?

A: No.

Q: Have any of them conferred with you?

A: No.

Q: What is your understanding of the availability of the lighter in this case?

A: It's not available. It was lost in the accident.

Q: So you haven't examined the lighter which is alleged to have been involved in the accident?

A: That's true.

Q: Have you examined any other Bic lighters in connection with this case?

A: No.

\* \* \* \* \* \*

Q: As to the condition of those components in the Willard lighter you don't know what their condition was when the lighter left the hands of Bic, right?

A: I don't know what the specific condition of each of those components was, no.

Q: You don't know the general condition of them, do you?

A: No, I don't know the general condition.

Dr. Geremia assumes as true the findings and conclusions of Mr. Warman, yet admits that he has made no independent evaluation of reconstruction of the accident as hypothesized by Mr. Warman. Dr. Geremia's opinion as to the cause of the accident and the lighter are, in his own words, based on reports authorized by Mr. Warman and Mr. Sanders. However, this Court has determined that the testimony of Mr. Warman and Mr. Sanders is based on mere speculation and conjecture.

Dr. Geremia testified that his opinion was derived from other investigators.

Q: You take [Warman's] reconstruction of the accident at face value and add to it a scenario which you believe would explain a malfunction of a lighter?

A: I add it to my knowledge of the lighter and the causes and sequences which are consistent with his description and conclusion.

The Willards state that they rely on the expert testimony of Dr. Geremia that the most probable manner in which the lighter could cause such a fire was a malfunction of that product. Yet, Dr. Geremia has not demonstrated that he bases his opinion on any facts which demonstrate that the lighter would have to malfunction in order to cause a fire.

Dr. Geremia has not examined the subject lighter, has not conducted testing in support of his opinions and he relies upon the speculative and conjectural testimony of non-eyewitnesses. Even assuming that Dr. Geremia's testimony is anything but mere speculation, plaintiffs have not made any showing that it is customary for experts in Dr. Geremia's field to base their conclusions on the type of secondary sources which Dr. Geremia has based his opinion.

While plaintiff asserts that the lighter was the only likely cause of the fire, Bic

concludes that plaintiffs are unable to prove their claim that a malfunctioning Bic lighter was the more reasonable cause of the Willard's injuries. Plaintiffs are unable to refute the equally plausible theory that the accident was caused by an accumulation of gas fumes.

Because the evidence points equally to a cause for which Bic might be responsible and to a cause for which Bic would not be responsible, plaintiffs have not made and are unable to make a sufficient case for submission to a jury. Plaintiff boldly asserts that the testimony of Bill Berg and William Willard, viewed in the light most favorable to plaintiffs, rules out the presence of gasoline fumes in the proximity of Mrs. Willard's face at the time of ignition of the lighter. The Court disagrees that the mere conclusions of lay witnesses rule out the presence of gas fumes. Similarly, the reports and conclusions of Sanders and Warman do not "eliminate other causes of the incident."

Plaintiffs' proposed expert's conclusions do not measure up to the requirements of substantiality and probative force. Their opinions are not supported by sufficient facts or evidence and therefore would not assist the jury. In the instant case, the sources upon which the alleged experts base their opinions are of such little weight that the jury should not be permitted to receive them. The experts' opinions are based on assumptions which are not supported by facts actually established.

In addition, plaintiff's cases on causation can be distinguished from the case at bar. In *Winters v. Sears, Roebuck & Co.,* 554 S.W.2d 565 (Mo.Ct.App.1977), a television caught fire. The *Winters* expert testified that he could not pinpoint the specific defect because too many parts around the picture tube had been destroyed. The Court stated that the existence of a defect could be inferred from circumstantial evidence without the aid of expert opinion evidence. *See Williams v. Ford Motor Co.,* 411 S.W.2d 443 (Mo.Ct.App.1966).

Plaintiffs cite *Winters* for its holding that a jury may determine that an incident resulted from a defect rather than from other causes based upon an opinion of a qualified expert that the defect was the more reasonable probable cause. However, Bic aptly points out that, unlike a television set, the very purpose of a cigarette lighter is to produce a flame and plaintiff's alleged experts have not shown that a malfunction of the lighter was the more reasonable probable cause of the accident.

Plaintiff also cites *Klein v. General Elec. Co.,* 714 S.W.2d 896 (Mo.Ct.App.1986) in which a timed coffeemaker caught on fire. The Court stated that although plaintiff's experts were unable to pinpoint a specific defect in the coffeemaker, they noted potential defects. Plaintiff's experts concluded that but for a malfunction of the coffeemaker there would not have been a fire. Again, Bic points out that the purpose of the lighter is to produce a flame. Thus, the analogy plaintiff attempts to draw simply does not apply where the *Klein* expert testimony was based on the premise that but for a malfunction there would not have been a fire.

The court in *Tucker v. Central Hardware Co.,* 463 S.W.2d 537, 540 (Mo.1971) reminded the parties that although a plaintiff is not required to produce 'absolutely positive' proof, a finding must be based upon probative facts, and a verdict founded on speculation and conjecture cannot stand. The circumstances must point to the desired conclusion with such a degree of certainty as to make that conclusion reasonable and probable and must rise above the stature of guesswork, speculation or surmise. *Gray v. Williams,* 289 S.W.2d 463 (Mo.Ct.App.1956).

In the instant case, plaintiffs have not shown that a malfunction of the lighter was the more reasonable probable cause of the fire. Plaintiffs have not been able to direct this Court to any facts which support the theory that the lighter malfunctioned. Plaintiffs' alleged experts' opinions would be of no assistance to the jury where such opinions are based on mere speculation and conjecture.

■■■ Plaintiffs have also asserted a claim for punitive damages. Defendants

assert that the basis for the claim is unclear because Bic maintains that there is a complete lack of evidence or claim to sustain a proof for punitive damages in this case. The Missouri Supreme Court has stated:

> Acts justifying imposition of punitive damages must be willful, wanton, malicious or so reckless as to be in utter disregard of the consequences. There must be some element of wantonness or bad motive.

*McClellan v. Highland Sales and Investment Co.*, 484 S.W.2d 239, 242 (Mo.1972). Bic asserts that as a matter of law there is no evidence to support a verdict for punitive damages and accordingly, the claim should be dismissed.

Moreover, the claim for punitive damages should fail as a natural consequence of the dismissal of plaintiffs' other substantive legal claims for compensatory damages. Plaintiffs have failed to show that a malfunction of the lighter was the more reasonable probable cause of plaintiff's injury. Therefore any claim for punitive damages as a result of any injury must fail because plaintiff has not presented this Court with sufficient evidence to make a submissible case to a jury on the issue of the alleged malfunction.

### Missouri Merchandising Practices Act

■ Plaintiffs allege that Bic has concealed, suppressed or omitted material facts regarding the dangerous and/or defective character of its lighters and, further, that Bic was aware of these conditions as a result of receiving numerous consumer complaints. Thus, plaintiffs claim that Bic violated the Missouri Merchandising Practices Act. Mo.Rev.Stat. § 407.010 et seq.

The Act provides a private cause of action for:

> 1. Any person who purchases or leases goods or services primarily for personal, family or household purposes and *thereby suffers an ascertainable loss of money or property, real or personal, as a result* of the use or employment by another person of a method, act or practice declared unlawful by section 407.020,

may bring a private civil action ... (emphasis added).

The Act does not define deceptive practices, thereby leaving to the court in each particular instance to determine whether fair dealing has been violated. *State ex rel. Webster v. Areaco Inv. Co.*, 756 S.W.2d 633 (Mo.Ct.App.1988).

However, plaintiffs have not shown that an injury was proximately caused by defendant's actions. *State ex rel. Ashcroft v. Marketing Unlimited*, 613 S.W.2d 440, 445 (Mo.Ct.App.1981). This Court has found that plaintiffs have not shown that a malfunction of the lighter was the more reasonable probable cause of the accident. Therefore, plaintiffs do not fall under the statute because they cannot show that they purchased a good and thereby suffered a loss as a result of its use. Plaintiffs were unable to refute the equally plausible theory that an accumulation of gas fumes caused the fire when Mrs. Willard lit the Bic lighter.

Bic adds that *even if* plaintiffs had properly pleaded causation, Bic's conduct does not constitute an unfair practice within the meaning and intent of the Act. Plaintiff has the burden of proving that the defendant's conduct amounted to an unfair practice. After a survey of Missouri cases brought under the Act, Bic summarizes the common fact pattern; a defendant makes misleading and deceptive representations or omissions directed toward the complaining consumer with knowledge that the information is untrue or misleading and with knowledge that the consumer would rely on this information or consider it when making a purchase.

In the case at bar, Mrs. Willard purchased a disposable butane lighter for her personal use. She has testified that she read and understood the instructions affixed to Bic lighters and their cellophane packages. The warning and instructions accompanying a Bic lighter of the type alleged to be involved in this occurrence state:

WARNING:
★CONTAINS EXTREMELY FLAMMA-
BLE GAS UNDER PRESSURE
★ONLY ADJUST FLAME WHEN
LIGHTER IS LIT. ROTATE WHEEL
TOWARD + FOR HIGHER FLAME,
TOWARD − FOR LOWER FLAME
★KEEP AWAY FROM FACE WHEN
IGNITING
★BE SURE FLAME IS COMPLETELY
OUT AFTER EACH USE
★KEEP AWAY FROM HEAT ABOVE
120°F (49°C). DO NOT INCINERATE
AND AVOID PROLONGED EXPO-
SURE TO SUNLIGHT
★DO NOT KEEP LIT CONTINUOUS-
LY FOR MORE THAN 30 SECONDS
★KEEP OUT OF REACH OF CHIL-
DREN

The only representations made to Mrs. Willard by Bic were those contained on the packaging and labels which accompany the Bic lighters when sold. Bic states that there is no misrepresentation, falsity and no concealment contained in the warning language. The warnings and representations on the package are not statements known to be false nor has Bic omitted any information from these warnings that is known to be misleading or known to create a false impression to the consumer.

Plaintiffs asserts that Bic has been aware of the allegedly dangerous nature of its disposable lighter for years. Plaintiffs state that Bic has never advertised that some people have complained that they experienced a lighter which failed to extinguish. Plaintiffs maintain that intercompany memos demonstrate that Bic had knowledge of continuing complaints regarding failure of the Bic adjustable lighter and that Bic's engineering department confirmed the validity of the complaints. Plaintiffs argue that if Bic was aware of consumer complaints and recurring injuries caused by failure of its products, and neither changed its design or manufacturing process nor warned consumers of the specific hazards of its product, then Bic has committed a "concealment, suppression or omission" of material fact under the Missouri Act. Plaintiffs assert that they have evidence showing that Bic knows that its

product, even when used as intended, is capable of causing great physical harm and Bic failed to warn the consumer of the potential consequences of using the product.

Bic maintains that it has supplied adequate warnings and instructions with its product. Bic submits that these warnings and instructions are reasonably calculated to result in safe product usage. The warnings given are not misleading, deceptive or untrue. Consequently, Bic asserts that its conduct in marketing the disposable lighter does not amount to an unfair practice under the Act and this claim should be dismissed.

The purpose of the Merchandising Practices Act is to "supplement the definitions of common law fraud in an attempt to preserve fundamental honesty, fair play and right dealings in public transactions." *State ex rel. Danforth v. Independence Dodge, Inc.*, 494 S.W.2d 362, 368 (Mo.Ct. App.1973). Bic responds that there is no case law to support the position that maintaining a cause of action under Chapter 407 in conjunction with a products liability action is consistent with the letter and spirit of the Unfair Merchandising Practices Act. Bic asserts that *if* plaintiff has any cause of action it is under Missouri products liability law and not under the Unfair Merchandising Practices Act. The Unfair Merchandising Practices Act was designed to provide a cost effective and expedient method for consumers and the Missouri Attorney General's office to address fraudulent conduct.

Accordingly, it is hereby

ORDERED that defendant Bic's motion for summary judgment is granted.