[No. 831-2. Division Two. December 19, 1973.]

AMELIA BOMBARDI *et al., Respondents,* v. POCHEL'S APPLIANCE AND TV COMPANY, *Defendant,* ADMIRAL CORPORATION, *Appellant.*

*James M. Beecher* and *Wayne C. Vavrichek* (of *Wolf, Hackett, Beecher & Hart),* for appellant.

*Albert R. Malanca* (of *Gordon, Thomas, Honeywell, Malanca, Peterson, O'Hern & Johnson*), for respondents.

ARMSTRONG, J.—We previously filed an opinion in this case on October 16, 1973. *Bombardi v. Pochel's Appliance & TV Co.,* 9 Wn. App. 797, 515 P.2d 540 (1973). There we affirmed the judgment of the trial court in favor of plaintiff Mrs. Bombardi for damages to her rental property, and in favor of plaintiffs Messina for personal injuries and property loss. The damages were sustained as a result of a fire occurring in Mrs. Bombardi's duplex, which was being occupied by the Messinas.

Since filing our prior opinion, we have reviewed a petition for rehearing or modification, a supplemental brief in support of the petition for rehearing filed by additional counsel associated on behalf of defendant Admiral Corporation, an answer to the petition for rehearing and supplemental brief, and finally, a reply brief in support of the petition for rehearing. Based upon this review we have determined that perhaps our prior opinion was not entirely clear as to the basis of our decision.

This case involves a used television set, manufactured by Admiral Corporation and purchased by Mrs. Bombardi, which was completely consumed in the fire occurring in the Bombardi duplex. We held there was nevertheless substantial evidence from which a jury could reasonably conclude that the set was in a defective condition when it left the hands of the manufacturer, and that the defective television set was a proximate cause of the damage to plaintiffs. The basic position of Admiral in this petition for rehearing or modification is that the evidence was insufficient to support a finding of a manufacturing defect, and that the jury's determination was based upon speculation and conjecture. We disagree.

Three expert witnesses called by the plaintiffs all agreed that the television set was the cause of the fire. However, it was virtually impossible to identify as the most probable

cause of the fire any particular part that malfunctioned, since the set was destroyed beyond any testing or examination. Despite the fact that plaintiff is unable to point an accusing finger at a particular defective component, we held that the plaintiff is not precluded from establishing a product is defective.

In assessing the defectiveness of a product, one of the problems is that although the authorities supporting the doctrine of strict liability in tort have recognized the necessity that the plaintiff establish there was a "defect" in the defendant's product, the term defect has been defined only on a case-by-case basis, and has not been found susceptible of any general definition.[1] Dean Prosser relates that the "prevailing" interpretation of "defective" is that "the product does not meet the reasonable expectations of the ordinary consumer as to its safety." W. Prosser, *Torts* § 99, at 659 (4th ed. 1971). For example, it has been held that a defect is any condition not contemplated by the user which makes the product unreasonably dangerous to him. *Farr v. Armstrong Rubber Co.*, 288 Minn. 83, 179 N.W.2d 64 (1970). It has similarly been held that a product is defective if it is dangerous or unsafe because it fails to perform in the manner reasonably to be expected in light of its nature and intended function. *Stammer v. General Motors Corp.*, 123 Ill. App. 2d 316, 259 N.E.2d 352 (1970); *Ginnis v. Mapes Hotel Corp.*, 86 Nev. 408, 470 P.2d 135 (1970); *Dunham v. Vaughan & Bushnell Mfg. Co.*, 42 Ill. 2d 339, 247 N.E.2d 401 (1969). Under Minnesota law, a product is defective if it fails to perform reasonably, adequately and safely the normal, anticipated or specified use to which the manufacturer intends that it be put, and it is unreasonably dangerous to the plaintiff. *Daleiden v. Carborundum Co.*, 438 F.2d 1017 (8th Cir. 1971). Such a definition of a defective product is propounded by several law review

[1]63 Am. Jur. 2d *Products Liability* § 130 (1972); R. Hursh, *American Law of Products Liability* § 5 A:6, at 360 (Cum. Supp. 1973).

commentators,[2] and more significantly, by the Restatement (Second) of Torts, which was adopted as the law of strict products liability in this state. *Ulmer v. Ford Motor Co.*, 75 Wn.2d 522, 452 P.2d 729 (1969). According to the Restatement, a product is defective when it is "in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him." Restatement (Second) of Torts § 402A, comment *g* at 351 (1965); *approved, Curtis v. YMCA*, 82 Wn.2d 455, 463, 511 P.2d 991 (1973).

In this case the record discloses that on the night of the fire, the Messinas had been sitting on the davenport watching television until 11:30 p.m. At that time they turned the television off and went to bed. Approximately 5:45 in the morning they were awakened, saw smoke, and saw that the television set was on fire. As previously indicated, three expert witnesses all agreed the television set was the cause of the fire. Under these circumstances, the conclusion is inescapable that the television was defective because it performed in an unreasonably dangerous manner, and in a manner uncontemplated by any user or consumer.

█ We must emphasize that the mere fact of an accident, standing alone, does not generally make out a case that a product was defective.[3] On the other hand, there are some accidents as to which there is common experience dictating that they do not ordinarily occur without a defect, and as to which the inference that a product is defective should be permitted.[4] Particularly apposite to the instant situation is the opinion of the Oregon Supreme Court in *Heaton v. Ford Motor Co.*, 248 Ore. 467, 471, 435 P.2d 806

---

[2]Traynor, *The Ways and Meanings of Defective Products and Strict Liability*, 32 Tenn. L. Rev. 363 (1965); Wade, *Strict Tort Liability of Manufacturers*, 19 Sw. L.J. 5 (1965); Dickerson, *Products Liability: How Good Does A Product Have To Be?*, 42 Ind. L.J. 301 (1967); for a discussion of whether the defect must render the product "unreasonably dangerous," see 49 Wash. L. Rev. 231 (1973).

[3]*See* Keeton, *Manufacturer's Liability: The Meaning of "Defect" in the Manufacture and Design of Products*, 20 Syracuse L. Rev. 559, 564 (1969).

[4]*See* W. Prosser, *Torts* § 103, at 673, 674 (4th ed. 1971).

(1967). There the court discussed the requirement of proving that a product is dangerously defective as follows:

> In the type of case in which there is no evidence, direct or circumstantial, available to prove exactly what sort of manufacturing flaw existed, or exactly how the design was deficient, the plaintiff may nonetheless be able to establish his right to recover, by proving that the product did not perform in keeping with the reasonable expectations of the user. When it is shown that a product failed to meet the reasonable expectations of the user the inference is that there was some sort of defect, a precise definition of which is unnecessary. If the product failed under conditions concerning which an average consumer of that product could have fairly definite expectations, then the jury would have a basis for making an informed judgment upon the existence of a defect.

(Footnotes omitted.)

More recently, after noting that no conflict of laws problem was presented since the parties had agreed that both Oregon and Washington adopted section 402A of the Restatement (Second) of Torts, the United States Court of Appeals for the Ninth Circuit reiterated the test announced by the Oregon Supreme Court in the above quotation. *Summers v. Interstate Tractor & Equip. Co.*, 466 F.2d 42, 46 (9th Cir. 1972).

We note that counsel for Admiral Corporation in their briefs in support of this petition for rehearing or modification "assumed (arguendo)" that there was a defect in the television at the time of the fire. We again hold that there was substantial evidence for the jury to conclude as a *matter of fact* that the television was in a defective condition, unreasonably dangerous to the user.

Our inquiry cannot end here, though, since the Supreme Court has recently held unequivocally that pursuant to the Restatement, as adopted in *Ulmer v. Ford Motor Co., supra,* "the burden of proof is upon the plaintiff to show that the product was in a defective condition when it left the manufacturers." *Curtiss v. YMCA, supra* at 463.

As to this issue, the record discloses that in May of 1966,

defendant Admiral Corporation manufactured the subject color television set, Model LK 5311. This set was sold as a new model to a Mr. Sanford and delivered to him on February 15, 1967. There is uncontradicted evidence, not objected to at trial, to the effect that this set was serviced throughout its first ownership by Pochel's Appliance and TV Company, an authorized Admiral dealer. Further testimony was received to the effect that the set was not serviced an unusually large number of times, nor was there anything particularly unusual about the nature of the repairs. In servicing the set, only Admiral parts were used, with the possible exception of some tubes. The set was traded back to the Pochel organization by the original owner, and it was testified that prior to its sale to Mrs. Bombardi in January of 1970, the set was checked out according to a procedure whereby the back was removed from the television and all the dust blown from the set. All the tubes were checked, and any defective tubes were replaced. The under-chassis wiring was observed for possible burned resistors and other obvious defects. Power was applied to the set to observe any problems, and if any difficulty remained after a one-half hour check without finding the trouble, the problem was related to the service manager.

Most significantly, uncontradicted testimony was received without objection that at the time of its sale to Mrs. Bombardi as a used model, except for the length of time it had been used by the original owner, the set was in the same condition as Admiral manufactured it.

The set was purchased by Mrs. Bombardi approximately 2 months before the fire. The Messinas' testimony indicated that the set worked well at first, but that a few days before the fire, they complained to Pochel's Appliance and TV that the picture was wavering, and that two stations would appear on one channel. Mr. Messina testified that Pochel's told him they would send a technician out to check the set for him on the Monday or Tuesday following the day of the fire.

We are of the opinion that the evidence discussed above

constituted sufficient circumstantial evidence from which the jury could reasonably infer that the television set, at the time of the fire, except for the approximately 2 years of use, was in substantially the same condition as when it left the control of the defendant, Admiral Corporation. It has already been established that it was permissible for the jury to conclude that the television set was defective. We therefore reaffirm our prior decision that the plaintiffs in this case did meet their burden of proving that a proximate cause of their damages was a television set which was in a defective condition when it left the hands of the manufacturer.

Our opinion filed October 16, 1973, is modified, for the sake of making the basis of our decision more clear, in accordance with the opinion herein. In all other respects we adhere to our former opinion.

PEARSON, C.J., and PETRIE, J., concur.

Petition for rehearing denied January 22, 1974.

Review denied by Supreme Court March 5, 1974.