CINCINNATI INSURANCE COMPANY, APPELLANT, *v.* VOLKSWAGEN OF AMERICA, INC., APPELLEE.

(No. 84AP-738 — Decided
April 23, 1985.)

*McNamara & McNamara* and *John L. Miller,* for appellant.

*Schottenstein, Zox & Dunn* and *Rick E. Marsh,* for appellee.

LYNCH, J. Plaintiff is appealing the judgment of the Franklin County Court of Common Pleas, which sustained defendant's motion for a directed verdict at the close of plaintiff's case.

This is a products liability subrogation action arising out of an incident on October 7, 1981, when a 1976 Volkswagen Dasher station wagon, owned by Timothy and Janet Dixon, caught fire in their garage and caused damages that were stipulated at $49,332.57. Mr. and Mrs. Dixon had a homeowner's insurance policy issued by plaintiff, which paid them for their damage incurred from the fire and filed suit as subrogee against defendant, which had distributed the vehicle to a Columbus Volkswagen dealer from whom Mr. and Mrs. Dixon had purchased it in the latter part of 1976.

The basis for this action is that the Volkswagen Dasher had been defectively designed and manufactured, and that said defect had directly and proximately caused the damage to the Dixons' property.

On the day of the fire, Mrs. Dixon drove her son to his preschool about one and one-half miles away. On her return, she noticed a strange odor when she was about a block from her house. After she parked the car in the garage, she first noticed dense smoke coming from around the area of the steering column, and then saw orange flames behind the dashboard. She tried to extinguish the fire with a pan of water and the garden hose. She opened the hood but did not see any flames. She was unsuccessful in extinguishing the fire, which extensively damaged the insureds' car and home.

At the time of the fire, the vehicle had been driven between 70,000 and 80,000 miles.

Mr. Richard Harmer, plaintiff's expert witness, testified that he examined the wreckage of the car and took several photographs which are exhibits in this case. Based upon his investigation, Mr. Harmer testified that he found a wire in the main electrical cable harness with a weldent, which is evidence of shorting and arcing; that the main electrical cable harness is usually part of the original manufacturing of any automobile; that, in his opinion, such wire was installed by Volkswagen as part of the manufacture of the vehicle; and that such wire was the origin of the fire. He further testified that this was the only physical evidence that he found in the wreckage of the vehicle that would indicate that it was the source of the fire. Mr. Harmer did not know the function of the particular wire which showed evidence of arcing and shorting, nor did he know why such arcing and shorting occurred.

The main electrical cable harness is fully encased in a rubber boot or tube. The purpose of the rubber shield is to protect the wires from having their insulation rubbed off.

At the close of plaintiff's testimony, defendant moved for a directed verdict on the basis that plaintiff had not demonstrated that any defect existed in the vehicle at the time that it left the hands of defendant. The trial court sustained defendant's motion on the basis that there was no evidence as to a defect in the vehicle or its design at the time it left defendant, nor could he find anything on which the jury could draw an inference as to any such defect.

Plaintiff's only assignment of error is that the trial court erred in granting a directed verdict in favor of defendant-appellee, Volkswagen of America, Inc., at the close of the case of plaintiff-appellant, Cincinnati Insurance Company.

The syllabus of *State Auto. Mut. Ins. Co.* v. *Chrysler Corp.* (1973), 36 Ohio St. 2d 151 [65 O.O.2d 374], states, in pertinent part, as follows:

"2. In products liability cases involving defects in automobiles, the plaintiff's burden of proof consists of alleging and proving, by a preponderance of the evidence, that: (1) There was, in fact, a defect in the product manufactured and sold by the defendant; (2) such defect existed at the time the product left the hands of the defendant; and (3) the defect was the direct and proximate cause of the plaintiff's injuries or loss. (*Lonzrick* v. *Republic Steel Corp.,* 6 Ohio St. 2d 227 [35 O.O.2d 404], approved and followed.)"

In *Gast* v. *Sears Roebuck & Co.* (1974), 39 Ohio St. 2d 29 [68 O.O. 2d 17], the court, at page 31, stated, in pertinent part, as follows:

"This court has stated that:

" '* * * [A] defective condition [in a product at the time it left the control of the manufacturer] may be proved by circumstantial evidence, where such evidence * * * [shows] that the accident was caused by a defect and not other possibilities, although it is not necessary in a civil action to eliminate all other possibilities. * * *' *State Auto Mutual Ins. Co.* v. *Chrysler Corp.* (1973), 36 Ohio St. 2d 151, 156 [65 O.O.2d 374]."

The syllabus of *Leichtamer* v. *American Motors Corp.* (1981), 67 Ohio St. 2d 456 [21 O.O.3d 285], states, in pertinent part, as follows:

"2. A product is in a defective condition unreasonably dangerous to the user or consumer if it is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner."

In the instant case, plaintiff's expert witness testified that the origin of the fire that was the proximate cause of its insureds' damages was caused by the shorting and arcing of a wire in the main electrical cable harness that was part of the vehicle when it left the hands of defendant. The determinative questions in this case are whether the cause of this fire was a defect in such wire, and whether such defect existed at the time the vehicle left the hands of defendant.

The *Gast* case concerned a fire that evidence established was probably caused by a television set. The court, at 32, stated, in pertinent part, as follows:

" '* * * Defect-free television sets do not *ordinarily* start fires, so the proximate cause of the fire could reasonably be ascribed to a defect in that television.' " (Emphasis *sic.*)

In *Vernon* v. *Lake Motors* (1971), 26 Utah 2d 269, 488 P.2d 302, plaintiffs purchased a new automobile. After being driven approximately 10,000 miles, it caught fire from a fire that originated under the dashboard. At trial, plaintiffs were unable to isolate any specific reason for the fire. The fourth headnote of the syllabus of the *Vernon* case is as follows:

"Evidence in suit against automobile dealer and manufacturer by buyer for damage to automobile which was ruined by fire which originated under the dash made submissible case on ground of breach of warranty even without specification by buyer as to which parts were defective and nature of defect. * * *"

In the *Vernon* case, the court stated, in pertinent part, at 274, 488 P.2d at 306, as follows:

" '* * * Ford Motor Company * * * argues that * * * plaintiff must specify which parts were defective and the nature of the defect * * *. They seem to argue that this proof can only be made by direct evidence. As to the latter contention, circumstantial evidence is adequate as proof if its quality is such that

the jury believes that the greater probability of truth lies therein. *A fire breaking out underneath a dashboard is a circumstance which cries out for explanation.* Looking at the evidence in the light of common sense and experience, the minds of jurors acting fairly thereon could arrive at conclusions with reasonable certainty. When there is added thereto the opinion of the expert, Mr. Schefski, that it resulted from a fault in the electric wiring, it would not strike us as being unreasonable for a jury to conclude therefrom that the fire resulted from a defect in the mechanism of the automobile as covered by the warranty hereinabove quoted." (Emphasis added.)

In both the *State Auto. Mut. Ins. Co.* case and the *Gast* case, the defect in the product in each case caused the claimed damage within three months of the purchase of such product while, in this case, the fire occurred approximately five years after the purchase of the vehicle.

No Ohio cases have come to the attention of this court as to the application of the above-cited principle of law cited in the *Gast* case to an alleged defect in a product that caused damage after a comparative period of time to the instant case.

*Bombardi* v. *Pochel's Appliance and TV Co.* (1973), 10 Wash. App. 243, 518 P.2d 202, concerns a television set which caused a fire. The set was originally sold on February 15, 1967 and was traded back to the defendant. In January 1970, the set was sold to plaintiffs as a used model. Two months later, while the television set was off, it caught fire, with resulting damages to plaintiffs. The court in the *Bombardi* case stated, in pertinent part, at 244-249, 518 P.2d at 203-206, as follows:

"Three expert witnesses called by the plaintiffs all agreed that the television set was the cause of the fire. However, it was virtually impossible to identify as the most probable cause of the fire any particular part that malfunctioned, since the set was destroyed

beyond any testing or examination. Despite the fact that plaintiff is unable to point an accusing finger at a particular defective component, we held that the plaintiff is not precluded from establishing a product as defective.

"* * *

"We must emphasize that the mere fact of an accident, standing alone, does not generally make out a case that a product was defective. On the other hand, there are some accidents as to which there is common experience dictating that they do not ordinarily occur without a defect, and as to which the inference that a product is defective should be permitted. Particularly apposite to the instant situation is the opinion of the Oregon Supreme Court in *Heaton* v. *Ford Motor Co.*, 248 Ore. 467, 435 P.2d 806 (1967). There the court discussed the requirement of proving that a product is dangerously defective as follows:

" 'In the type of case in which there is no evidence, direct or circumstantial, available to prove exactly what sort of manufacturing flaw existed, or exactly how the design was deficient, the plaintiff may nonetheless be able to establish his right to recover, by proving that the product did not perform in keeping with the reasonable expectations of the user. When it is shown that a product failed to meet the reasonable expectations of the user the inference is that there was some sort of defect, a precise definition of which is unnecessary. If the product failed under conditions concerning which an average consumer of that product could have fairly definite expectations, then the jury would have a basis for making an informed judgment upon the existence of a defect.'

"* * *

"We are of the opinion that the evidence discussed above constituted sufficient circumstantial evidence from which the jury could reasonably infer that the television set, at the time of the fire, except for approximately two years

of use, was in substantially the same condition as when it left the control of defendant, Admiral Corporation [the manufacturer]. * * *"

We conclude that reasonable jurors could find that a defect-free main electrical cable harness of a motor vehicle does not ordinarily start fires; that the reasonable expectations of a buyer of a motor vehicle is that the main electrical cable harness of such vehicle will not start a fire; and that an inference of a defect can be made from the fact that a fire originated in a main electrical cable harness without any known contributing causes by users of such motor vehicles. We further hold that the fact that plaintiff's expert witness did not know either the function of the particular wire which showed evidence of arcing and shorting or why such arcing and shorting occurred went to the weight of his testimony but did not disqualify his testimony.

In this case, a distinction has to be made between the cause of the fire, which plaintiff's evidence indicates as the shorting and arcing of a wire in the main electrical cable harness, and the cause of such shorting and arcing, which was not established by plaintiff's evidence. We presume that, if such main electrical cable harness was properly designed and manufactured, such shorting and arcing of wires in the main electrical cable harness would not occur through normal use of the vehicle.

Defendant has pointed out that after the automobile left defendant, it underwent several changes. The dealer, Davidson-Green Volkswagen, installed a stereo-radio, speakers, cruise control and air conditioning before selling the car to the Dixons. In 1977, the vehicle was involved in an accident which resulted in extensive damage to the front end of the vehicle, and Davidson-Green Volkswagen performed the repairs. In 1978, Mr. Dixon installed both a Citizens Band radio and an electrically operated antenna in the automobile. In addition, the Dixons experienced several problems with various relays in the automobile, which were repaired by both Campus Auto and J & A Auto Parts, and later by Mr. Dixon.

The evidence established that the wire in the main electrical cable harness was attached to the fuse box or block either on the back or side, and that there were posts within the fuse box to which connections were made for the different electrical appliances used in the car. Mr. Harmer testified that he found no physical evidence that the fuse box, stereo-radio, cruise control, air conditioning, front-end collision in 1977, radio-tape deck, Citizens Band radio, power antenna, or replacement of relays caused the fire. There is no evidence that the shorting and arcing of the wire was caused by any source outside the rubber shield in which it was enclosed.

The testimony of this case was directed at the cause of this fire. We hold that plaintiff introduced sufficient testimony to go to the jury as to whether the cause of the fire was the wire in the main electrical cable harness of the vehicle.

Defendant's position is that plaintiff's evidence goes to the origin of the fire but does not establish the cause of the shorting and arcing of the wire. Defendant's position has been raised in other cases without success. There is nothing in the record to establish that the additional electrical appliances or electrical wiring added to the vehicle were other than normal and expected use of such vehicle, or that a front-end accident in 1977 would cause a shorting and arcing of the wire in 1981.

Pursuant to the *Gast* case, and the other cases cited in this opinion, we hold that the plaintiff introduced sufficient evidence for the jury to find that the cause of the fire was the wire in the main electrical harness that was in the vehicle when it left the hands of defendant; that the wire was defective; that

such defect existed at the time such vehicle left the hands of defendant; and that such defect was the direct and proximate cause of the damages at issue in this case. Therefore, we hold that the trial court committed error in granting a directed verdict in favor of defendant, and that plaintiff's assignment of error has merit.

Plaintiff's assignment of error is sustained, and the judgment of the trial court is reversed and the case is remanded for further proceedings pursuant to law.

*Judgment reversed and case remanded.*

WHITESIDE and NORRIS, JJ., concur.

LYNCH, J., retired, of the Seventh Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.