980 F.2d 731
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Angelo R. PRINCE; Eileen B. Prince, Plaintiff-Appellant,
v.
The 3M COMPANY, Defendant-Appellee.
 No. 92-3036.
 United States Court of Appeals, Sixth Circuit.
 Nov. 30, 1992.
 
 Before KEITH, KENNEDY and NATHANIEL R. JONES, Circuit Judges.
 PER CURIAM:
 
 
 1
 Plaintiffs-appellants, Angelo R. Prince and Eileen B. Prince, appeal the summary judgment dismissal of their products liability action against defendant-appellee, The 3M Company. The Appellants' claims rest on their contention that The 3M Company manufactured a defective prosthesis which was surgically attached to appellant Angelo Prince's femur (thigh) and hip. On November 29, 1991, the district court granted The 3M Company's motion for summary judgment, holding that the evidence submitted by appellants was "simply not sufficient to permit a reasonable jury to find that the prosthesis on which plaintiff's expert has opined is the prosthesis removed from him." R. 42: Memorandum and Opinion at 5. The district court also held that appellants' reliance on the expert testimony of Dr. Howard Mettee "does not serve to establish an issue of material fact on plaintiff's claim." Id. For the reasons stated below, we REVERSE the district court's grant of summary judgment.
 
 I.
 
 2
 Mr. Prince was born with a congenital abnormality of his left hip. In 1941, he underwent hip surgery at the Cleveland Clinic where Dr. Dickson inserted metal screws into his left hip joint. In the mid 1970's Mr. Prince began having pain and was referred by his family physician to Dr. Scherbel at the Cleveland Clinic. Dr. Scherbel referred Mr. Prince to Dr. Lester Borden, an orthopedic surgeon at the Cleveland Clinic, who gave Mr. Prince a total left hip replacement on October 20, 1976. Dr. Borden testified that he did not advise Mr. Prince about the possibility of prosthetic breakage. The 3M Company contends that Dr. Borden used an Aufranc-Turner prosthesis for Mr. Prince's operation, which they and a number of other companies were manufacturing in the 1970's.
 
 
 3
 Experiencing pain in his hip, Mr. Prince was examined by Dr. Joseph Burns, an orthopedic surgeon, on September 1, 1981. Dr. Burns testified that x-rays taken of Mr. Prince revealed a fractured femoral implant. Dr. Borden testified that about ten days after Dr. Burns' discovery, he removed the fractured femoral implant and replaced it with another implant. Several months later, Mr. Prince returned to the Cleveland Clinic for a follow-up appointment with Dr. Borden and requested the broken prosthesis that had been removed from his thigh. One of Dr. Borden's assistants gave him a broken Noel Design prosthesis.
 
 
 4
 The issue presented by this appeal is whether the Noel Design prosthesis produced by Mr. Prince is the prosthesis that was surgically attached to his thigh in 1976 and removed by Dr. Borden in 1981. The district court granted summary judgment for The 3M Company based primarily on its conclusion that Mr. Prince had insufficient evidence to establish that the prosthesis in his possession was the actual prosthesis that was attached and removed from his leg. The district court also held that Mr. Prince's expert testimony was inadmissible, and, therefore, summary judgment for The 3M Company was appropriate, even if Mr. Prince could establish that he had in his possession the actual prosthesis that was implanted and later removed from his thigh.
 
 II.
 
 5
 We review the district court's grant of summary judgment for The 3M Company de novo. White v. Turfway Park Racing Ass'n, Inc., 909 F.2d 941, 943 (6th Cir.1990). As stated by the United States Supreme Court in Celotex Corp. v. Catrett, 417 U.S. 317 (1986), under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Id. at 322. We must view "all facts and inferences in the light most favorable to the nonmoving party." White, 909 F.2d at 943. Note that "in the face of a properly supported motion for summary judgment, the nonmoving party cannot merely rest on its pleadings, but must come forward with probative evidence to support its claim." Id. at 943-44. To withstand a motion for summary judgment, the facts proffered by the nonmoving party "must be such that if they were proven at trial, a reasonable jury could return a verdict for the nonmoving party." Id. at 944.
 
 A.
 
 6
 It is undisputed that the prosthesis that was surgically implanted into Mr. Prince in 1976 was manufactured by the The 3M Company. What is disputed by the parties, however, is what model prosthesis was implanted into Mr. Prince. Mr. Prince claims it was a Noel Design, but The 3M Company claims it was an Aufranc-Turner model. The district court dismissed Mr. Prince's case based on its conclusion that Mr. Prince had insufficient evidence to prove that the prosthesis in his possession was, in fact, the one that was surgically attached to him in 1976 and removed in 1981. The court wrote:
 
 
 7
 The only evidence plaintiff has indicating that the prosthesis in plaintiff's possession is the same one that was removed from plaintiff in the 1981 surgery, is plaintiff's testimony that he obtained the prosthesis in January or February of 1982 from one of Dr. Borden's assistants (he could not recall whom) approximately three to four months after it was removed in October 1981. (Prince Deposition, at 82-83). In the face of the [sic] Dr. Borden's testimony and the evidence about the markings on the prosthesis, plaintiff's evidence on this issue constitutes no more than a scintilla of evidence. This evidence is simply not sufficient to permit a reasonable jury to find that the prosthesis on which plaintiff's expert has opined is the prosthesis removed from him.
 
 
 8
 R. 42: Memorandum Opinion at p. 5.
 
 
 9
 As the district court noted in its opinion and order, Dr. Borden, who performed the implant and removal of the prosthesis from Mr. Prince's thigh, testified at deposition that the prosthesis which he surgically implanted in Mr. Prince's thigh was an Aufranc-Turner model, not a Noel Design. The 3M Company also presented evidence from an expert's examination, which Mr. Prince does not contest, revealing that the prosthesis currently in Mr. Prince's possession has a model number and markings of a Noel Design prosthesis. Dr. Borden's deposition testimony and the testimony regarding the model number on the prosthesis is what The 3M Company and the district court relied on in support for the summary judgment motion against Mr. Prince. Mr. Prince, however, contends that the physical evidence reveals that a Noel Design prosthesis was implanted in his thigh in 1976. Specifically, he contends that the x-rays of his leg taken in 1981 show that the prosthesis was a Noel Design, not an Aufranc-Turner. Appellants also submitted evidence which shows that Dr. Borden might have been mistaken about the type of prosthesis he implanted and later removed from Mr. Prince's thigh. When shown the broken pin and asked whether, "This would be the pin," Dr. Borden stated, "It sure looks like it." R. 28: Borden Dep. at 40. In addition to the x-rays, Mr. Prince offered photographs of the fractured implant taken by Dr. Donald Cox. R. 23.
 
 
 10
 The 3M Company contends that the x-rays that Mr. Prince attached to his brief opposing their motion for summary judgment, were not authenticated by competent testimony pursuant to Rule 56(e) of the Federal Rules of Civil Procedure. However, Mr. Prince offered as authentication for the x-rays the deposition testimony of Dr. Allen Wilde, who testified to an x-ray report dated September 15, 1981. R. 27: Wilde Dep. at 9. The district court did not address the issue of the x-rays in its opinion and order.
 
 
 11
 This Circuit held in Adkins v. United Mine Workers of America, that when considering a motion for summary judgment, "[t]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 941 F.2d 392, 399 (6th Cir.1991) (emphasis added), reh'g, en banc denied, Adkins v. United Mine Workers, (6th Cir.), and cert. denied, United Mine Workers v. Adkins, 117 L.Ed.2d 424, 112 S.Ct. 1180 (1992).
 
 
 12
 The district court's evaluation of the evidence in this case and the grant of summary judgment for The 3M Company is contrary to this Circuit's statement in Adkins regarding the judge's role in summary judgment proceedings. Rather than viewing the record in the light most favorable to Mr. Prince to determine whether there was a genuine issue for trial, the district judge weighed the evidence and effectively decided the case in favor of The 3M Company. When the pleadings, affidavits and depositions relied on by Mr. Prince are viewed in the light most favorable to his cause of action, it is clear that there exists a genuine issue of material fact. The district judge's conclusion that Mr. Prince has proffered "no more than a scintilla of evidence" to support his claim is a gross misstatement. R. 42: Memorandum and Order at 5. Accordingly, we reverse the district court's grant of summary judgment and remand the case for further proceedings.
 
 B.
 
 13
 The district court stated that even if Mr. Prince were able to establish that the prosthesis in his possession is, in fact, the one that was surgically implanted in his thigh, summary judgment should still be granted for The 3M Company. R. 42: Memorandum and Opinion at 6, n. 3. This conclusion was based on the district court's finding that the expert evidence offered by Mr. Prince in the form of deposition testimony and affidavits from Dr. Howard Mettee is inadmissible as expert testimony pursuant to Rule 702 of the Federal Rules of Evidence. Rule 702 states:
 
 
 14
 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
 
 
 15
 In Sterling v. Velsicol Chemical Corp., 855 F.2d 1188, 1208 (6th Cir.1988), this Circuit articulated four criteria to be considered in determining whether expert testimony is admissible.
 
 
 16
 [A] four-part test must be met to uphold the admission of "expert testimony": (1) a qualified expert (2) testifying on a proper subject (3) which is in conformity to a generally accepted explanatory theory (4) the probative value of which outweighs its prejudicial effect.
 
 
 17
 This Circuit held in Mannino v. Intern. Mfg. Co., 650 F.2d 846, 849 (6th Cir.1981), that "the determination of the qualifications of an expert is largely within the discretion of the trial court, and unless it has erred or abused its discretion, its determination is not subject to review."
 
 
 18
 In the instant case, there is no evidence that the trial court erred or abused its discretion in ruling that Mr. Prince's expert testimony is inadmissible under Rule 702. The appellants failed to establish that Dr. Mettee was a qualified expert with sufficient scientific, technical or other specialized knowledge in the field of metallurgical science, or that the "clay test" employed by Dr. Mettee in examining the prosthesis is accepted within the scientific community. Therefore, we affirm the district court's exclusion of his testimony.
 
 
 19
 Although we agree with the district court's conclusion that appellants' failed to establish that Dr. Mettee's testimony should be admitted as expert testimony, we do not agree that this warrants granting summary judgment for The 3M Company.
 
 
 20
 Mr. Prince alleges that The 3M Company is liable to him for damages he sustained as a result of the failure of The 3M Company's prosthesis less than five years after it was implanted in his thigh. The facts underlying Mr. Prince's cause of action appear to fall within the rule stated in Cincinnati Insurance Co. v. Volkswagon of America, 29 Ohio App.3d 58 (1985), a products liability case involving the appeal of a directed verdict for the defendant. In Volkswagon of America, the Ohio Court of Appeals for Franklin County found that reasonable jurors could determine whether an electrical cable harness of an automobile ordinarily starts a fire. The court based its decision on the following reasoning:
 
 
 21
 "We must emphasize that the mere fact of an accident, standing alone, does not generally make out a case that a product was defective. On the other hand, there are some accidents as to which there is common experience dictating that they do not ordinarily occur without a defect, and as to which the inference that a product is defective should be permitted....
 
 
 22
 "In the type of case in which there is no evidence, direct or circumstantial, available to prove exactly what sort of manufacturing flaw existed, or exactly how the design was deficient, the plaintiff may nonetheless be able to establish his right to recover, by proving that the product did not perform in keeping with the reasonable expectations of the user. When it is shown that a product failed to meet the reasonable expectations of the user the inference is that there was some sort of defect, a precise definition of which is unnecessary. If the product failed under conditions concerning which an average consumer of that product could have fairly definite expectations, then the jury would have a basis for making an informed judgment upon the existence of a defect.'
 
 
 23
 Volkswagon of America, 29 Ohio App.3d at 61 (quoting from Bombardi v. Pochel's Appliance and TV Co., 10 Wash.App. 243, 518 P.2d 202 (1973)). Based on the rule articulated in Volkswagon of America, Mr. Prince should have been allowed to present his case to a jury, despite his inability to convince the district judge that the prosthesis in his possession was the actual one removed from his thigh in 1981.
 
 
 24
 In light of Volkswagon of America, we do not believe that the question of whether The 3M Company's prosthesis was defective is a question that can only be answered by an expert and not by the common experience of a jury weighing the evidence and facts as presented by the parties. In the instant case, it is obvious that the prosthesis in question did not perform in accordance with Mr. Prince's expectations. The 3M Company's prosthesis was implanted into Mr. Prince's left thigh on October 20, 1976, without any warning regarding the life of the prosthesis or prosthetic breakage. On August 31, 1981, without apparent cause, he began to experience pain in his left thigh. On the following day, x-rays were taken of his thigh and revealed the broken prosthesis. Given these circumstances, we think there is a basis for a reasonable jury to make an informed judgment about whether the prosthesis was suitable for its intended purpose. Accordingly, we reverse the district court's grant of summary judgment and remand the case for further proceedings consistent with this opinion.
 
 III.
 
 25
 For the foregoing reasons, we REVERSE the district court's grant of summary judgment for The 3M Company.
 
 
 26
 KENNEDY, Circuit Judge, concurring in part and dissenting in part.
 
 
 27
 I concur in the panel's opinion except for part IIB. I agree that if in common experience a failure of a product is of a type unlikely to occur unless the product is defective, Ohio permits the fact finder to infer a defect from the circumstances. Cincinnati Ins. Co. v. Volkswagon of America, Inc., 29 Ohio App.3d 58, 61 (1985). However, I do not believe this case falls in that category. There is no common experience to tell us, or to guide the jury, as to whether the failure of this prosthesis in this man, subjected to the unique strains for a period of five years, would not occur in the absence of a defect. The circumstances here require expert testimony.