SHAW, Appellant,

v.

TOYOTOMI AMERICA, INC., et al., Appellees.

[Cite as *Shaw v. Toyotomi Am., Inc.* (1995), 101 Ohio App.3d 54.]

Court of Appeals of Ohio,
Third District, Marion County.

No. 9-94-49.

Decided February 8, 1995.

---

*Murray & Murray* and *William H. Bartle;  Firstenberger & Mathews* and *Thomas A. Mathews,* for appellant.

*Porter, Wright, Morris & Arthur, Mason Evans* and *Lisa L. Eschleman,* for appellees.

SHAW, Presiding Judge.

Plaintiff-appellant, Connie M. Shaw, n.k.a. Connie M. Swihart, appeals from the decision of the Marion County Court of Common Pleas, granting summary judgment in favor of defendants-appellees, Toyotomi America, Inc., and Toyotomi Kogyo Co., Ltd., on plaintiff's complaint for personal injuries and property damage.

On February 5, 1991, a fire occurred at plaintiff's home, resulting in personal injuries and property damage.  On August 4, 1992, plaintiff filed an amended complaint in the Marion County Court of Common Pleas alleging that the fire was caused by a defective model RCA–87 kerosene heater which was manufactured and distributed by defendants.  In particular, plaintiff alleged that the kerosene heater was defective in manufacture in violation of R.C. 2307.74, that it

was defective in design in violation of R.C. 2307.75, that defendants failed to provide adequate warnings in violation of R.C. 2307.76, and that the kerosene heater failed to conform to representations that it was safe for its intended use in violation of R.C. 2307.77. Plaintiff's assignments of error do not address the propriety of the trial court's ruling with respect to allegations of inadequate warnings or failure to conform to representations that the product was safe for its intended use.

On June 1, 1994, defendants filed a motion for summary judgment in the trial court. On June 20, 1994, plaintiff filed her memorandum in opposition to defendants' motion. On July 22, 1994, the trial court granted summary judgment in favor of defendants on each of plaintiff's claims. On July. 28, 1994, plaintiff filed a motion to reconsider the trial court's July 22, 1994 summary judgment ruling. On August 16, 1994, the trial court issued a judgment entry which overruled plaintiff's motion to reconsider the trial court's July 22, 1994 summary judgment ruling, entered judgment in favor of defendants and dismissed plaintiff's complaint.

Thereafter, plaintiff filed the instant appeal, asserting the following assignments of error:

"I. The trial court erred in granting summary judgment on plaintiff's products liability claim against the defendant/manufacturer and defendant/supplier of an unvented kerosene heater when plaintiff presented expert evidence by affidavit and deposition that:

"(A) The origin of the fire was the kerosene heater based on spill and burn patterns;

"(B) The cause of the fire was leakage of kerosene from the heater based on spill and burn patterns and the elimination of other causes;

"(C) The leakage of kerosene and the blow torch phenomenon were a performance and/or design defect in the heater.

"II. An expert may render an opinion as to the cause and origin of a fire based upon: (A) spill and burn patterns as shown in post-fire photographs; (B) A description of the spill and burn patterns from eyewitnesses; (C) An examination of the fire debris; (D) The eyewitness account of how the fire progressed from the plaintiff; and (E) An examination of the heater.

"III. When an expert testifies that a kerosene heater is designed and/or constructed in such a manner that it will leak kerosene, and the leakage of the kerosene caused the fire, a question of fact exists as to whether the heater is defective, which should be decided by the trier of fact.

"IV. A defect in the construction and/or performance of a kerosene heater may be inferred from the testimony of experts that the fire was caused by a leakage of kerosene from the heater when other explanations for the presence of the kerosene are eliminated by a preponderance of the evidence (plaintiff denies any act would have caused the presence of kerosene at the origin location).

"V. A plaintiff presents sufficient evidence to defeat a motion for summary judgment on a products liability claim based, in part, on a design defect when the expert testifies that: (A) the leakage of kerosene from the heater *probably* occurred at the connection at the removable fuel tank, and that the heater should have been designed without a make/break connection at that location in order to make the heater as safe as an ordinary consumer would expect, and (B) that an automatic fuel shut-off should have been incorporated into the design to prevent a fire from fuel leakage, irrespective of the source of the leak.

"VI. Summary judgment should not be granted in a products liability claim when plaintiff's expert and the fire chief in charge of extinguishing the fire find that the cause and origin of the fire was leakage of kerosene from a defective kerosene heater, and defendant's expert does not contest that origin of the fire was the kerosene heater, but testifies that the cause was the plaintiff filling the heater with an improper, excessively volatile fuel, such as gasoline, which the plaintiff denies."

█ As all six of plaintiff's assignments of error concern the propriety of the trial court's summary judgment ruling, they will be addressed together. In substance, plaintiff argues that based on her expert's testimony, genuine issues of material fact exist regarding whether the RCA–87 kerosene heater, which was manufactured and distributed by defendants, contained defects in design or manufacture pursuant to R.C. 2307.74 and 2307.75.

In Ohio, it is well settled that in order for a plaintiff to recover on a products liability claim, it must be proven by a preponderance of the evidence that:

" * * * (1) There was, in fact, a defect in the product manufactured and sold by the defendant; (2) such defect existed at the time the product left the hands of the defendant; and (3) the defect was the direct and proximate cause of the plaintiff's injuries or loss." *State Auto. Mut. Ins. Co. v. Chrysler Corp.* (1973), 36 Ohio St.2d 151, 65 O.O.2d 374, 304 N.E.2d 891, paragraph two of the syllabus; see, also, R.C. 2307.71 *et. seq; State Farm Fire & Cas. Co. v. Chrysler Corp.* (1988), 37 Ohio St.3d 1, 523 N.E.2d 489.

Moreover, in establishing a prima facie product liability case, "[p]roduct defects may be proven by direct or circumstantial evidence. Where direct evidence is unavailable, a defect in a manufactured product existing at the time the product left the manufacturer may be proven by circumstantial evidence where a prepon-

derance of that evidence establishes that the loss was caused by a defect and not other possibilities, although not all other possibilities need be eliminated." *State Farm, supra,* 37 Ohio St.3d at 6, 523 N.E.2d at 493–494.

The trial court, in its summary judgment entry, held that plaintiff offered no evidence that the heater in question was defective in design or manufacture. The court was of the opinion that plaintiff's expert made conclusory and unsubstantiated assumptions regarding the alleged defectiveness of the heater and that those conclusions and assumptions were based on a "cursory" inspection of the heater.

The record contains, via affidavit and deposition, the expert testimony of James D. Madden, a licensed professional engineer. Madden testified that in his opinion, there was a leakage of kerosene from plaintiff's heater and that such a leakage rendered it defective. In his affidavit, Madden stated that in his opinion, "the most probable location for the source of the leak was the point where the removable fuel container makes its connection with the heater."

Madden stated further in his affidavit that in his opinion, "the vapors from the leaked fuel retained on the tray were most probably ignited by the flame on the wick * * * [and] that as a result of the burning of this leaking fuel, kerosene which remained in the heater vaporized, causing two (2) flames to shoot from the heater under pressure in a torch-like fashion." Madden's opinions concerning the cause of the fire are consistent with plaintiff's deposition testimony in which she stated that after the fire started, she witnessed two flames shooting up from both sides of the kerosene heater.

In addition to Madden's deposition and affidavit and plaintiff's deposition, plaintiff submitted the affidavit of Gene Rowland, who was the Chief of the New Bloomington Fire Department at the time of the fire. In Rowland's affidavit, which was submitted in conjunction with plaintiff's motion to reconsider the trial court's summary judgment ruling, he stated he was of the opinion that based on spill and flame patterns present in plaintiff's house, the fire was caused by the kerosene heater which "was faulty because it leaked." Rowland further stated that upon examining the kerosene heater at the fire scene, it did not smell of gasoline, which defendants assert was the true cause of the fire.

Thus, based on the evidence set forth in the record, it appears that there are at least two plausible explanations for the cause of the fire. One explanation, which was set forth by plaintiff's expert and described in plaintiff's deposition, asserts that the fire originated from a leakage of kerosene which resulted in a so-called "blow torch phenomenon" which caused flames to shoot up from both sides of the heater. The other explanation, as set forth by defendants' expert, is that plaintiff misused the kerosene heater by filling it with gasoline, a fuel which is more volatile than kerosene.

Based on the foregoing, we cannot agree that no genuine issues of material fact exist concerning whether the kerosene heater in question was defective in design or manufacture or whether the heater was the proximate cause of the fire. Plaintiff has set forth eyewitness testimony describing the nature of the fire and expert testimony as to the cause of the fire, the probable location of the kerosene leakage and the probable process by which the leakage of kerosene caused flames to emit from the heater.

■ Defendants argue that Madden's "untested notions are simply insufficient to establish liability against [defendants] in this action." However, plaintiff's expert was not required to accurately pinpoint the precise location of the alleged product defect in order to defeat defendants' motion for summary judgment. While in certain instances, Madden's deposition testimony is not as precise as the language of his affidavit, the fact remains that plaintiff has come forward with competent expert testimony which established the probable location of the alleged defect present in the heater as well as the probable source of the fire. See *State v. Benner* (1988), 40 Ohio St.3d 301, 313, 533 N.E.2d 701, 714 ("an expert opinion is competent only if it is held to a reasonable degree of scientific certainty. * * * In this context, 'reasonable certainty' means 'probability'.") Thus, the fact that plaintiff's expert can only speak in terms of probabilities goes to the weight and not admissibility of his testimony. *Cincinnati Ins. Co. v. Volkswagen of America, Inc.* (1985), 29 Ohio App.3d 58, 62, 29 OBR 68, 71–72, 502 N.E.2d 651, 655–656.

We therefore hold that based on the evidence in the record, reasonable jurors could infer the existence of a product defect and conclude, absent speculation, that the fire in question resulted from a manufacturing or design defect present in the Toyostove RCA–87 kerosene heater. *Id.*

In summary, as plaintiff has met her burden in establishing her prima facie case that a defect was present in defendants' product when it was manufactured and sold, plaintiff's six assignments of error are sustained. Accordingly, the judgment of the Marion County Court of Common Pleas is reversed, and the cause is remanded to that court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

THOMAS F. BRYANT, J., concurs.

EVANS, J., dissents.

EVANS, Judge, dissenting.

Because I feel that the plaintiff failed as a matter of law to prove the existence of a defect in the manufacturer's product at the time that it left the manufacturer's hands, I dissent.

In order to establish a prima facie case of strict product liability based on a manufacturing defect, a plaintiff has the burden of proving that the defect existed at the time the product left the hands of the defendant. *State Farm Fire & Cas. v. Chrysler Corp.* (1987), 37 Ohio St.3d 1, 6–7, 523 N.E.2d 489, 493–495; *Lonzrick v. Republic Steel Corp.* (1966), 6 Ohio St.2d 227, 35 O.O.2d 404, 218 N.E.2d 185. Thus, "evidence of unsafe, unexpected performance of a product, while sufficient to infer the existence of a defect, satisfies but one of the three elements necessary for recovery. Plaintiffs are still required to demonstrate by a preponderance of direct or circumstantial evidence that the claimed defect was present when the product left the hands of the manufacturer and proximately caused the claimed injuries." *State Farm,* 37 Ohio St.3d at 6–7, 523 N.E.2d at 494.

During his deposition, the plaintiff's expert, James D. Madden, P.E., testified as follows:

"Q: What was the cause of the fire in the tray?

"A: Leakage of kerosene.

"Q: And from where did the kerosene leak?

"A: Somewhere in the apparatus.

"Q: Can you be any more specific?

"A: Well, it would be any place that didn't hold together properly.

"Q: Have you identified any place in this heater that didn't hold together properly?

"A: No."

" * * *

"Q: And barring leakage, do you know do [if] these heaters perform within their design parameters?

"A: I don't know what the design parameters are so I wouldn't know whether they perform within them."

In an affidavit submitted with the plaintiff's memorandum contra the defendant's motion for summary judgment, Madden attested that "the most probable location for the source of the leak was the point where the removable fuel container makes its connection with the heater. * * * "

Testimony of a defect must be credible, specific, and related to the facts of the case. *State Farm*, 37 Ohio St.3d at 9–10, 523 N.E.2d at 496–497; *Moreland v. Ford Motor Co.* (Dec. 18, 1992), Allen App. No. 1–92–61, unreported, 1992 WL 380275; *Springer v. Am. Motors Corp.* (Dec. 24, 1987), Crawford App. Nos. 3–86–33 and 3–86–34, unreported, 1987 WL 32137; *Naugle v. Campbell Soup Co.* (June 20, 1986), Henry App. No. 7–84–24, unreported, 1986 WL 7312. In the instant case, the plaintiff's expert could not even identify *the* defect, and at best can only point to the possible location of a kerosene leak. In my view, the plaintiff's expert testimony at best establishes that a defect may have existed. However, neither Madden's deposition testimony nor his rebuttal affidavit identifies the specific manufacturing defect and that this alleged defect existed when the heater left the manufacturer's hands.

"A motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial." *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus. Here, there was a complete failure of proof on an essential element, and therefore I feel the trial court properly granted summary judgment in favor of the defendant on the plaintiff's manufacturing defect claim.

Furthermore, the plaintiff failed to establish the existence of a design defect. The plaintiff's expert testified as follows during his deposition:

"Q: Well, you've testified that if you break and remake the connection such as where the can goes in, that would not be adequate protection, correct, against leakage?

"A: Well, of course any time you make and break a connection, every time you make and break a connection, you're stressing it a little bit. And it is very commonly the first place that you find leakage, if you ever find leakage in an item, so I'm simply saying that the design includes an aspect to it which is generally speaking less than desirable if you're dealing with toxic or flammable materials and I have not gotten enough information to see how well it was designed but I do know that the basic concept is not best. * * *

"Q: But based on what you told me a few minutes ago, you are not testifying that it was that particular connection which caused the leakage in this case?

"A: No, I have not identified that is the particular connection but it is the most probable location in the system if the rest of the system is solidly designed and I have not seen enough of the system in its pristine condition to know if it is solidly designed."

Such testimony is neither specific, credible, nor related to the facts of this case to support a strict product liability action based on a defective design theory.

Furthermore, the plaintiff's rebuttal evidence is insufficient to establish a genuine issue of material fact. The plaintiff's expert points to four or more possible alternative design defects without establishing the existence of any one. See *Stinson v. England* (1994), 69 Ohio St.3d 451, 633 N.E.2d 532, paragraph one of the syllabus. In my view, this is simply not enough to survive a motion for summary judgment. The plaintiff merely presented expert testimony that, in some way, the heater may have been defectively designed.

I would affirm the judgment of the trial court.